IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 9, 2005 Session

## MISTY MICHELLE GLISSON v. MOHON INTERNATIONAL, INC./CAMPBELL RAY

**Direct Appeal from the Circuit Court of Henry County**
**No. 1941, Julian P. Guinn, Judge**

_____

**No. W2004-01588-SC-R3-CV - Filed March 13, 2006**

_____

The employer in this workers' compensation action has appealed from a judgment of the Circuit Court of Henry County finding that the employee suffered a work-related back injury. The trial court awarded the employee benefits based on 30% permanent partial disability to the body as a whole. The employer contends on appeal that the medical proof, which does not include any medical testimony, is insufficient to establish a causal connection between the employee's injury and her employment. The dispositive question before this Court is whether the evidence preponderates against the trial court's finding that the employee's injury arose out of her employment. We conclude that the record and applicable law support the trial court's decision to award benefits. We further hold that a local rule of the 24th Judicial District which prohibits the taking of medical depositions in workers' compensation cases absent leave of court is invalid. The trial court's judgment is affirmed.

**Tenn. Code Ann. § 50-6-225(e); Judgment of the Circuit Court Affirmed**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., E. RILEY ANDERSON, JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

Mark C. Travis, Cookeville, Tennessee, for the appellant, Mohon International, Inc./Campbell Ray.

Robert T. Keeton, III, Huntingdon, Tennessee, for the appellee, Misty Michelle Glisson.

### OPINION

#### Factual and Procedural Background

The employee, Misty Glisson, age twenty-five, began working for the employer, Mohon International, Inc./Campbell Ray, in January 2000. The employee, whose job involved making furniture, operated a saw in the employer's plant. Her duties required her to lift large pieces of wood

and place them on a conveyor. The employee quit high school in the tenth grade but later obtained her GED. Her work history has been primarily in manual labor.

The employee testified that in December 2000, she was in the process of flipping a sheet of laminate paneling with another employee when the panel "pulled [her] over" and she fell to the ground in pain, unable to get up. A co-worker, Wahnetah Calorio, testified that she was helping the employee flip the panel, which weighed seventy-five to eighty pounds, when the employee injured her back and fell to the floor. Both the employee and Calorio testified that the employee immediately reported the injury to Kara Evans, a supervisor, who had been summoned to the scene. Evans advised the employee to get up and "walk it off" and indicated that she would be back later to complete an accident report. A first report of injury form was not completed, however, until November 16, 2001, after the employee filed suit. The form states that the employee injured her back bending over to pick up a board.

The employee first sought medical treatment for her back injury on December 28, 2000, from her family physician, Terry Harrison, M.D.[1] Harrison treated the employee from December 2000 to July 2001. The employee reported to Harrison that she was having back pain which radiated down her left leg. The first note in Harrison's records concerning the employee's back injury states in part: "Back inj. 2 weeks ago."[2] In a subsequent note, Harrison stated that the employee lifts

> approximately 100 lbs at work. I do think this is a little heavy for her; she only weighs 127 lbs. I think most of her back pain is related to her job; we did discuss this thoroughly. I did ask her to request a transfer to another job within the plant that doesn't require such heavy lifting.

Harrison's assessment of the employee's condition was "lower back pain, chronic." Harrison referred the employee to B. Martin Fulbright, M.D., for further evaluation and treatment.

From August 2001 to November 2001, the employee was treated by Fulbright, an orthopedic surgeon. Fulbright gave the employee work excuses which stated that she had been absent from work for treatment of a "Non-Occupational Injury/Illness." One of the work excuses indicates that the employee had a herniated disk. Records from Henry County Orthopedic Surgery and Sports Medicine, Inc. (the name of Fulbright's practice) contain the following notation: "[The employee] states that she has had pain in December and has had pain ever since and now has pain up and down the left side of her back." These records further indicate that the employee had "significant pain," made worse by her "heavy duty job." An MRI was performed, which revealed a herniated disk. A

---

[1] The employer's human resources director, Jeremy Phillips, testified that the employer did not offer any medical treatment to the employee because the employer did not realize that the employee injured herself at work. Kara Evans, the supervisor whom the employee and Ms. Calorio testified advised the employee to get up and "walk it off," did not testify at trial.

[2] The parties stipulated to the introduction of the employee's medical records. These medical records comprise the sum total of the medical proof.

note dated September 24, 2001, states that "at this time I [Dr. Fulbright] will keep her off work for fear of further injuring her back."

The employee was then referred to the West Tennessee Rehab Group. The medical records of the West Tennessee Rehab Group reflect that "back in December of last year, [the employee] started having a lot of problems at work when she twisted and hurt her back." These records further indicate that the employee had a severely ruptured disk.

As part of the employee's treatment, she underwent a nerve root block. An October 4, 2001, Admission History and Assessment form from the Jackson-Madison County General Hospital where the procedure was performed reflects that the employee "hurt [her] back at work by bending over." The nerve root block did not alleviate the employee's back pain. She continued to seek medical treatment on her own.

On October 9, 2001, the employee applied for short-term disability through the employer. In the part of the application titled "Employee Section," a question—"Is disability due to your occupation"—was not answered. In another part of the application titled "Employer Section," a question—"Did accident/illness arise out of or in the course of any employment for wages or profit"—was answered "No." The application indicates that the employee had experienced back pain since December 2000.

Beginning in November 2001, Keith Williams, M.D., undertook the employee's care. Williams' records reflect in pertinent part:

> This is a 23 year old white female who states she was at work about 10 months ago in December of 2000 when she was trying to pick up a piece of 8 by 10 plywood and her back went out. Another employee had to help her up. She notified her supervisor who didn't take any action and told her to walk it off. Over the course of the next couple of weeks she continued to have pain which worsened. Her supervisor, according to her, did not fill out an incident report and they would not refer her to a physician. She went to her primary care physician on her own. Over the course of the next six months, the primary care physician treated her with multiple different medications and at least four, possibly five, Medrol Dose Paks. After about seven months of continued pain in her left leg, she asked her primary care doctor to refer her to another doctor. She referred her to Dr. Fulbright. Dr. Fulbright is an orthopedic surgeon in Paris, Tennessee. He assessed her as having radicular pain in her left lower extremity and ordered an MRI which demonstrated a central disc. He referred her to Dr. Chung who did an epidural injection which did not help her pain. So she now presents to our office for follow-up. Ms. Glisson is now approximately 10 months out from her initial injury. She states she is worse now than she was six months ago, unchanged from how she was one month ago.

Williams diagnosed the employee as having a herniated disk and performed corrective surgery. Post-operatively, on January 18, 2002, Williams noted:

Overall, [the employee] is doing well. Her leg pain has been resolved. She is encouraged to continue her walking and exercise program. She should return to see me in about six weeks. She remains off work from any heavy lifting at this time. She is considering a change of occupation to a less strenuous position which I think would likely help her in the long run.

Williams gave the employee an anatomical impairment rating of 12% to the body as a whole. In a March 27, 2002 letter to the employee's attorney, Williams advised that the employee had been released to work but reiterated that she had not been released to her previous heavy lifting. Williams confirmed that he had encouraged the employee "to refrain from returning to her usual work due to the heavy lifting."

After considering the evidence as outlined above, the trial court found that the employee sustained a work-related injury to her back in December 2000. The trial court determined that the employee's injury resulted in a 30% permanent partial disability to the body as a whole. The trial judge observed that the employee "does impress the court with her veracity." The employer appealed.

The employer's appeal was heard by the Special Workers' Compensation Appeals Panel. During oral argument before the Appeals Panel, counsel for the parties indicated that a local rule in the 24th Judicial District requires that parties obtain permission of the court to take medical depositions in workers' compensation cases. The record was later supplemented to include the local rule, which was a standing order dated April 18, 1996. The order states in pertinent part:

Cases not resolved at the Benefit Review Conference will be promptly set for trial on the same medical records and evidence brought before the Benefit Review Specialist, unless good cause exists for the taking of additional proof. Testimony of health care providers may be taken by deposition for introduction at trial upon application to the Court and a showing of what information can be obtained by such testimony that is not presently in the record or otherwise available by less expensive means such as correspondence.

The appeal was transferred to the full Supreme Court prior to the Appeals Panel rendering a decision.

**Standard of Review**

We must review the trial court's findings of fact in a workers' compensation action de novo upon the record of the trial court, accompanied by a presumption that these findings are correct unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (2005). In reviewing documentary proof, we need not extend the same deference to the trial court's findings as required for issues involving the credibility and weight of oral testimony. See Saylor v. Lakeway Trucking, Inc., 181 S.W.3d 314, 322 (Tenn. 2005) (citing Lang v. Nissan N. Am., Inc., 170 S.W.3d

564, 569 (Tenn. 2005)). Ultimately, we must conduct an independent review of the evidence to determine where the preponderance of the evidence lies. See Cleek v. Wal-Mart Stores, Inc., 19 S.W.3d 770, 773-74 (Tenn. 2000).

## Analysis

To be compensable under the workers' compensation statutes, an injury must arise out of and occur in the course of the employment. Tenn. Code Ann. § 50-6-102(13) (1999). These statutory requirements are not synonymous, "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." Blankenship v. Am. Ordnance Sys., 164 S.W.3d 350, 354 (Tenn. 2005). An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. Fink v. Caudle, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993) (citing Williams v. Preferred Dev. Corp., 452 S.W.2d 344, 345 (Tenn. 1970)). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. Saylor, 181 S.W.3d at 318.

In contrast, "arising out of employment" refers to causation. Reeser v. Yellow Freight Sys., Inc., 938 S.W.2d 690, 692 (Tenn. 1997) (citing Braden v. Sears, Roebuck & Co., 833 S.W.2d 496, 498 (Tenn. 1992)). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. Fritts v. Safety Nat'l Cas. Corp., 163 S.W.3d 673, 678 (Tenn. 2005) (citing Phillips v. A & H Constr. Co., 134 S.W.3d 145, 150 (Tenn. 2004)). The mere presence of the employee at the place of injury because of the employment is not enough, as the injury must result from a hazard peculiar to the work or be caused by a risk inherent in the nature of the work. Blankenship, 164 S.W.3d at 354 (citing Thornton v. RCA Serv. Co., 221 S.W.2d 954, 955 (Tenn. 1949)).

In this case, there is no dispute that the employee's back injury occurred in the course of her employment. Rather, the dispute focuses on whether the injury arose out of the employment. In resolving this question, we note that except in the most obvious cases, causation must be established through medical evidence. Orman v. Williams Sonoma, Inc., 803 S.W.2d 672, 676 (Tenn. 1991). Although causation cannot be based upon speculative or conjectural proof, absolute medical certainty is not required, and reasonable doubt must be resolved in favor of the employee. Long v. Tri-Con Indus., 996 S.W.2d 173, 177 (Tenn. 1999) (citing Hill v. Eagle Bend Mfg., 949 S.W.2d 483, 487 (Tenn. 1997)). Thus, benefits may be properly awarded to an employee who presents medical evidence showing that the employment could or might have been the cause of his or her injury when lay testimony reasonably suggests causation. See Clark v. Nashville Mach. Elevator Co., 129 S.W.3d 42, 47 (Tenn. 2004).

Guided by these principles, we turn to an analysis of the present case. The employer argues that the trial court erred in finding that the employee established her injury to be work-related. The employer contends that the record is devoid of any medical proof establishing a causal connection between the employee's injury and her duties at work. The employer maintains that the medical records introduced into evidence establish only the histories provided by the employee to her treating

physicians and the treatment rendered by those physicians. The employer therefore urges this Court to reverse the trial court's award of benefits.

The medical evidence in this case consists entirely of the employee's medical records. Unlike most workers' compensation cases to come before this Court, there are no depositions of medical experts. Nor is there a C-32 medical report.[3] It seems to us that proceeding on the medical records alone is a risky and uncertain approach to litigating a workers' compensation case and, as this case demonstrates, may actually be more costly than if the parties had taken medical testimony.[4] Indeed, this appeal probably would have been unnecessary had medical testimony been taken or had a C-32 form been introduced into evidence.

The extent to which the parties' strategies to proceed without medical testimony were shaped by the procedure applied in the 24th Judicial District is not clear from the record. It is clear, however, that the local rule requiring leave of court to take medical testimony is contrary to Rule 30.01 of the Tennessee Rules of Civil Procedure. Rule 30.01 states that "any party may take the testimony of any person . . . by deposition upon oral testimony. Leave of court . . . must be obtained only if the plaintiff seeks to take a deposition" within 30 days of service of the summons and complaint or if the deponent is an inmate. Workers' compensation cases are not among those cases requiring leave of court under Rule 30.01. Moreover, according to Tennessee Supreme Court Rule 18(c), "any local rule that is inconsistent with a statute or a procedural rule promulgated by the Supreme Court shall be invalid." Rule 30.01 of the Tennessee Rules of Civil Procedure is a "procedural rule promulgated by the Supreme Court." Thus, the local rule at issue in this case is void.

Aside from the legality of the procedure used in the 24th Judicial District, we have carefully reviewed the record and are persuaded that the evidence does not preponderate against the trial court's finding that the employee's back injury arose out of her employment. The employee testified, without contradiction, that in December 2000 she was in the process of flipping a piece of wood, which weighed seventy-five to eighty pounds, when it "pulled [her] over" and she fell to the ground in pain, unable to get up. A co-worker who witnessed the incident, Wahnetah Calorio, corroborated the employee's testimony. Further, the employee's medical records reflect that she gave consistent histories to her health care providers about when and how she hurt her back. The trial judge believed the employee's account of what happened, commenting that the employee "does impress the court

---

[3] Tennessee Code Annotated section 50-6-235(c)(1)-(2) (2005) states that:

(1) Any party may introduce direct testimony from a physician through a written medical report on a form established by the commissioner of labor and workforce development. . .

(2) The written medical report of a treating or examining physician shall be admissible at any stage of a workers' compensation claim in lieu of a deposition upon oral examination. . . .

Thus, parties are permitted to use a medical report, commonly referred to as a C-32 form, in lieu of depositions as evidence at trial.

[4] At oral argument before the Special Workers' Compensation Appeals Panel, the employee's attorney admitted that he could have obtained a C-32 form or a physician opinion letter but chose not to because of the costs involved.

with her veracity." Moreover, the record contains the employee's medical records, which reflect Dr. Harrison's opinion that the employee's back condition was work-related. Specifically, Dr. Harrison stated in his notes that "I think most of [the employee's] back pain is related to her job; we did discuss this thoroughly." The employer presented no contrary medical proof. The employer did elicit an admission from the employee that she had gone to a hospital emergency room in November 2000 complaining of injuries sustained while lifting a dresser at home. However, the employee explained, without contradiction, that this November 2000 injury had affected her side, not her back.

In sum, there is nothing in the record linking the employee's back injury with any cause other than the lifting incident at work in December 2000. Although the evidence of causation is not overwhelming, we conclude that the lay testimony in conjunction with the medical evidence is sufficient to establish a causal relationship between the employee's work activities and her back injury. To the extent that any reasonable doubt may exist on this point, we construe it in the employee's favor. Clark, 129 S.W.3d at 50. We are inclined to reiterate, however, that relying upon an employee's medical records alone is a precarious–if not unwise–way to proceed in a workers' compensation case. Indeed, counsel for the employee stated at oral argument that this case "was not the best tried case." We agree.

## Conclusion

For the reasons stated above, we conclude that the local rule of the 24th Judicial District prohibiting medical depositions absent leave of court is invalid. We further hold that the evidence and applicable law support the trial court's finding that the employee's back injury arose out of her employment. Accordingly, the trial court's judgment is affirmed. Costs of appeal are assessed against the appellant, Mohon International, Inc./Campbell Ray, and its surety, for which execution may issue if necessary.

ADOLPHO A. BIRCH, JR., JUSTICE

-7-