# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
June 3, 2010 Session

## ANA R. PADILLA v. TWIN CITY FIRE INSURANCE COMPANY

**Appeal by Permission from the Special Workers' Compensation Appeals Panel
Chancery Court for Davidson County
No. 07-2647-III      Ellen Hobbs Lyle, Chancellor**

---

**No. M2008-02489-SC-WCM-WC - Filed October 6, 2010**

---

This appeal involves the workers' compensation liability of an employer for the unsolved fatal shooting of an employee on the employer's premises. The employee's surviving spouse filed suit in the Chancery Court for Davidson County seeking death benefits under Tennessee's Workers' Compensation Law. Following a bench trial, the trial court denied the widow's claim for workers' compensation benefits. The court concluded that the employee's death was the result of a neutral assault and that the "street risk" doctrine was inapplicable because the employer's premises were not open to the public. On appeal, the Special Workers' Compensation Appeals Panel declined to presume that neutral assaults on an employer's premises were compensable and affirmed the trial court's judgment. We granted the surviving spouse's petition for full court review. Like the Special Workers' Compensation Appeals Panel, we decline to engraft a non-statutory presumption favoring compensability in cases involving neutral assaults on the employer's premises. Accordingly, we affirm the judgment of the Special Workers' Compensation Appeals Panel and the trial court.

**Tenn. Code Ann. § 50-6-225(e)(6) (2008);
Judgment of the Special Workers' Compensation Appeals Panel Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which JANICE M. HOLDER and SHARON G. LEE, JJ., joined. GARY R. WADE, J., filed a dissenting opinion. CORNELIA A. CLARK, C.J., not participating.

H. Tom Kittrell, Jr. and T.J. Cross-Jones, Nashville, Tennessee, for the appellant, Ana R. Padilla.

Blakeley D. Matthews and Brian W. Holmes, Nashville, Tennessee, for the appellee, Twin City Fire Insurance Company.

# OPINION

## I.

Jose Sanchez began working as an apprentice mill worker for Xelica LLC in 2001. Xelica manufactured windows and doors, and its shop was located in one of Nashville's light industrial areas near I-65 and Herschel Greer Stadium. Mr. Sanchez was generally the first employee to arrive at the shop each morning, and the owner of the business had given him permission to open the building and begin working.

On the morning of July 13, 2007, Mr. Sanchez arrived at the shop at 4:42 a.m.[1] George C. Moolman, the owner of the business, arrived at approximately 6:00 a.m. While he saw Mr. Sanchez's automobile in the parking lot, Mr. Moolman did not see Mr. Sanchez at his workstation when he entered the shop. Mr. Moolman began to look for Mr. Sanchez when he noticed that Mr. Sanchez's customary music was not playing and that the machines were not running. He discovered Mr. Sanchez lying near the rear shop door with two gunshot wounds in his chest and two in his head. He also saw a pipe laying across Mr. Sanchez's body. Mr. Moolman called the police.

Detective David Achord and Detective Brad Corcoran were dispatched to Xelica to investigate Mr. Sanchez's murder. They discovered bullet holes and damage to the lock on the interior of the shop door. They ascertained from Mr. Moolman that nothing had been stolen, including the petty cash which was found undisturbed in the office. Mr. Sanchez's personal effects were also undisturbed. The officers recovered his wallet, credit cards, and car keys from his person. Neighboring property owners reported hearing gunshots between 5:10 and 5:30 a.m., but no one reported seeing anything suspicious.

A subsequent police investigation uncovered little additional information. The detectives found no indication that Mr. Sanchez was involved in criminal activity or that he had any gang affiliations. The results of laboratory testing of DNA found at the crime scene were inconclusive. Although the authorities identified two "persons of interest," no charges were ever filed, and no arrests were made. Eventually, the case was turned over to the Metropolitan Police Department's homicide cold case unit.

On November 27, 2007, Ana R. Padilla, Mr. Sanchez's widow, filed suit in the Chancery Court for Davidson County seeking to recover death benefits under Tennessee's Workers' Compensation Law for herself and her daughter. Xelica and its workers'

---

[1] The burglar alarm records showed that the alarm was deactivated, presumably by Mr. Sanchez, at 4:42 a.m.

compensation insurance carrier, Twin City Fire Insurance Company ("Twin City"), filed an answer admitting only that Mr. Sanchez had been killed intentionally and denying that either Ms. Padilla or her daughter were entitled to workers' compensation benefits.

During the September 24, 2008 trial, Ms. Padilla presented evidence intended to establish that Xelica's shop was in a high-crime area. This evidence included the testimony of an owner of a nearby business who had installed a razor wire fence, retained an outside security guard to be on-call, and obtained a handgun permit after his business was burglarized over twenty times. Ms. Padilla also called an employee of the Metropolitan Police Department who testified that nine forced entry burglaries, three non-forced entry burglaries, and one murder had been committed in the area between 2005 and 2007. Finally, Mr. Moolman testified he had considered installing a security fence after Xelica had been burglarized twice.

At the close of Ms. Padilla's case, Twin City moved for a directed verdict on three grounds. First, it pointed out that the neighboring business that frequently had been burglarized sold truck parts, had a visible storefront, and was open to the public; while Xelica was not open to the public and did not deal in goods that attracted burglars. Second, it pointed out that Xelica's two burglaries had been "inside jobs" and that the employees responsible for these crimes had been fired, which is why Mr. Moolman eventually decided not to install a security fence. Third, it emphasized that nothing had been taken from Xelica or Mr. Sanchez when he was fatally shot. The trial court denied the motion for directed verdict.

The trial court filed its memorandum opinion and order on October 3, 2008. The court concluded that "the greater weight and preponderance of the evidence does not establish that the motive for the shooting was a burglary of Xelica." It also concluded that no evidence had been presented that the crime was connected to Mr. Sanchez's private life. Accordingly, following the analysis in *Wait v. Travelers Indemnity Co. of Illinois*, 240 S.W.3d 220, 227 (Tenn. 2007), the trial court concluded that the shooting of Mr. Sanchez was a "neutral assault" because there was no proof that it was related to a crime against Xelica or to a personal conflict with Mr. Sanchez. The trial court also declined to apply the "street risk" doctrine. The court reasoned that even though Xelica's shop was located in an area with a "higher than average crime rate," the business did not advertise to the public, did not attract the public, and was not frequented by the public. Based on these findings, the trial court dismissed Ms. Padilla's complaint.

Ms. Padilla filed a notice of appeal pursuant to Tenn. Code Ann. § 50-6-225(e) (2008) on October 3, 2008. She presented the same arguments to the Special Workers' Compensation Appeals Panel that she had presented to the trial court. The Appeals Panel

observed that Ms. Padilla was, in effect, asking the panel to adopt the minority rule that in cases involving neutral assaults where the proof is inconclusive, the burden should be placed on the employer to prove that the assault was unrelated to the employee's employment. The Appeals Panel declined to accept Ms. Padilla's invitation. Rather, the Appeals Panel concluded that the burden of establishing compensability was on the worker or the worker's survivors and that the evidence did not preponderate against the trial court's findings of fact.

Ms. Padilla sought review of the Appeals Panel's decision in accordance with Tenn. Code Ann. § 50-6-225(e)(5)(A)(ii). We agreed to hear this case in order to determine (1) whether the evidence preponderates against the trial court's finding that the motive for the killing was not a burglary, (2) whether the evidence preponderates against the trial court's finding that the street risk doctrine does not apply, and (3) whether Tennessee should recognize a non-statutory presumption in neutral assault cases that the injury is compensable.

## II.

In workers' compensation cases such as this one, this Court reviews a trial court's factual findings "de novo upon the record . . . accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-225(e)(2); *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). The statute requires us to conduct an in-depth examination of the lower court's factual findings and conclusions. *Wilhelm v. Krogers*, 235 S.W.3d 122, 126 (Tenn. 2007) (quoting *Galloway v. Memphis Drum Serv.*, 822 S.W.2d 584, 586 (Tenn. 1991)). While we must give considerable deference to the trial court's findings of fact based on live testimony, *Anderson v. Westfield Grp.*, 259 S.W.3d 690, 695 (Tenn. 2008); *Tryon v. Saturn Corp.*, 254 S.W.3d at 327, we need not give similar deference to findings based on documentary evidence such as depositions. *Glisson v. Mohon Int'l, Inc./Campbell Ray*, 185 S.W.3d 348, 353 (Tenn. 2006); *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 322 (Tenn. 2005) (citing *Lang v. Nissan N. Am., Inc.*, 170 S.W.3d 564, 569 (Tenn. 2005)). Once we have determined the facts, it is our responsibility to apply the law to those facts, attaching no presumption of correctness to the trial court's conclusions of law. *See generally Perrin v. Gaylord Entm't Co.*, 120 S.W.3d 823, 826-28 (Tenn. 2003) (interpreting a statute of limitations and applying it to the trial court's factual findings).

## III.

To be compensable under Tennessee's Workers' Compensation Law, an injury must both arise out of the work and occur in the course of employment. *Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d at 225; *Blankenship v. American Ordnance Sys., LLS*, 164 S.W.3d 350, 353-54 (Tenn. 2005). These requirements are not synonymous. *Anderson v. Westfield*

*Grp.*, 259 S.W.3d at 695-96; *Glisson v. Mohon Int'l, Inc./Campbell Ray*, 185 S.W.3d at 353. The requirement that the injury "arise out of" the work refers to the cause or origin of the injury; while the requirement that the injury occur "in the course of" the work involves the time, place, and circumstances of the injury. *Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d at 225.

The parties in this case have not joined issue on whether Mr. Sanchez's death occurred in the course of the work. They have focused solely on whether the fatal attack on Mr. Sanchez arose out of his employment. We have recognized the following three categories for assaults that occur at the workplace:

> (1) assaults with an "inherent connection" to employment such as disputes over performance, pay or termination; (2) assaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment; and (3) assaults resulting from a "neutral force"[2] such as random assaults on employees by individuals outside the employment relationship.

*Woods v. Harry B. Woods Plumbing Co.*, 967 S.W.2d 768, 771 (Tenn. 1998) (footnote added). Assaults falling into the first category are compensable. *Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d at 227. Assaults falling into the second category are not. *Woods v. Harry B. Woods Plumbing Co.*, 967 S.W.2d at 771. The compensability of assaults falling into the third category "depend[s] on the facts and circumstances of the employment." *Woods v. Harry B. Woods Plumbing Co.*, 967 S.W.2d at 771.

Ms. Padilla insists that the only reasonable conclusion to be drawn from the evidence is that Mr. Sanchez was killed during a "burglary gone wrong" and, therefore, that the fatal assault was inherently connected with Mr. Sanchez's work. While the theory that Mr.

---

[2]Professor Larson has explained that a neutral-risk case includes cases "in which the cause itself, or the character of the cause, is simply unknown." 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 4.03, at 4-3 (2009) ("*Larson's Workers' Compensation Law*"). He has illustrated this type of case by pointing out that

> [a]n employee may be found to have died on the job from unexplained causes, or he or she may suffer a slip or fall for no reason that anyone, including the employee, can explain. An employee may be attacked by unknown persons, whose motives may have been personal or related to the employment.

1 *Larson's Workers' Compensation Law* § 4.03, at 4-3.

Sanchez was killed during a burglary gone wrong is one of the reasonable conclusions supported by the evidence, it is not the only reasonable conclusion. The evidence can also be reasonably viewed to be inconsistent with a burglary. Xelica's business is not the sort of enterprise that attracted outside burglaries. There is no evidence of an effort to break into the business. If anything, the evidence of the damage to the inside of the doors suggests a perpetrator who was attempting to escape, not one who was attempting to enter the premises. Finally, there is no evidence that anything was taken from Xelica or from Mr. Sanchez. When viewed in its entirety, the evidence could also permit a reasonable person to conclude that Mr. Sanchez was killed during an entirely random assault. Whatever the true motive of the assailant may have been, the evidence does not preponderate against the trial court's finding that this was a neutral force assault.

## IV.

Ms. Padilla, conceding that the lower courts correctly concluded that the assault that killed Mr. Sanchez was a neutral assault,[3] also insists that the only reasonable conclusion to be drawn is that the "street risk" doctrine enables her to recover under Tennessee's Workers' Compensation Law even if Mr. Sanchez was killed as a result of a "neutral force" assault. Xelica and Twin City respond that the facts in this case do not support an application of the "street risk" doctrine. We agree with Xelica and Twin City.

We first adopted the "street risk" doctrine in 1979 to offer guidance in an otherwise murky area of the law. In a case involving a truck driver who was shot by two assailants while entering his truck after lunch, we held that "the risks of the street are the risks of the employment, if the employment requires the employee's use of the street." *Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597, 602 (Tenn. 1979). Thus, the purpose of the "street risk" doctrine is to "provide[ ] the necessary causal connection between the employment and the injury" when "the employment exposes the employee to the hazards of the street." *Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d at 602.

The application of the "street risk" doctrine has now expanded to include employees whose work exposes them to the public. In a case involving an employee whose employer permitted her to work from a home office, we held:

---

[3]Ms. Padilla concedes that the trial court and the Special Workers' Compensation Appeals Panel did not err by classifying the assault on Mr. Sanchez as a neutral assault. She states in her brief that

> For the most part the appellant agrees with the trial court's findings of fact. In turn, the special workers' compensation panel issued a Memorandum Opinion which pretty well briefed the issue at hand, that is, whether there is a presumption in favor of the employee in a case of a neutral force assault.

When an employee suffers a "neutral assault" within the confines of her employer's premises - whether the premises be a home office or a corporate office - the "street risk" doctrine will not provide the required causal connection between the injury and the employment unless the proof fairly suggests either that the attacker singled out the employee because of his or her association with the employer or that the employment indiscriminately exposed the employee to dangers from the public.

*Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d at 230.

In the case before us, the trial court recognized the proper boundaries of the "street risk" doctrine but found that its requirements were not met. Even though the court acknowledged that "Xelica is located in a neighborhood with a higher than average crime rate," it found persuasive the dissimilarities between Xelica and the neighboring business that had been burglarized frequently. The trial court noted that, unlike its neighboring business, "Xelica was not frequented by the public nor did it advertise or attract the public." The court also noted that Xelica was secured with locks and a burglar alarm. The court concluded that "the conditions of Mr. Sanchez' [sic] employment at Xelica did not indiscriminately expose him to dangers of the public, including the danger of crime in the neighborhood."

Ms. Padilla argues that Mr. Sanchez's job "put him first in line to encounter intruders" because he was the first employee at the shop each morning.[4] While it is uncontested that Mr. Sanchez was the first person to arrive at the shop, the evidence supports the conclusion that, when Mr. Sanchez was at the shop, he was as removed from the public as he could possibly be. The business was not open to the public. Mr. Sanchez's duties did not require him to deal with the public. Members of the public were rarely in the shop. The record contains no evidence that members of the public frequented the vicinity of the shop during the early morning hours more than at other times during the day. As tragic as the facts of this case are, they do not provide a sound basis for us to conclude that the evidence preponderates against the trial court's conclusion that the "street risk" doctrine does not apply to this case.[5]

---

[4]The record is clear that Mr. Sanchez's job did not require him to be the first person at the shop each morning. In fact, Mr. Sanchez had repeatedly requested Mr. Moolman to permit him to open the shop early because Mr. Sanchez did not desire to return home after driving Ms. Padilla to work each morning. Mr. Moolman eventually accommodated Mr. Sanchez by allowing him to open the shop.

[5]The facts of this case differ significantly from the facts of *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496 (Tenn. 1992) that involved an assault and robbery on a Sears television repair technician. The

(continued...)

# V.

As a final matter, we turn our attention to whether Tennessee's Workers' Compensation Law requires or permits a presumption that employees injured in a neutral force assault are entitled to compensation unless the employer can prove that the injury arose from the employee's personal activities. Ms. Padilla asserts that such a presumption is not inconsistent with the law or with this Court's interpretations of the law. We respectfully disagree.

Tennessee's Workers' Compensation Law was enacted to provide injured employees with a streamlined process to receive compensation for work-related injuries. It did so by replacing common-law tort remedies with a no-fault system that provides compensation for work-related injuries based on a schedule of benefits. *See Woods v. Harry B. Woods Plumbing Co.*, 967 S.W.2d at 772; *Liberty Mut. Ins. Co. v. Stevenson*, 212 Tenn. 178, 182, 368 S.W.2d 760, 762 (1963); *Partee v. Memphis Concrete Pipe Co.*, 155 Tenn. 441, 444, 295 S.W. 68, 69 (1927). To be entitled to recover the statutory workers' compensation benefits, an employee need only show that his or her injury arose out of and occurred in the course of employment. *Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d at 225.

Tenn. Code Ann. § 50-6-116 (2008) directs the courts to construe the Workers' Compensation Law as a "remedial statute, which shall be given an equitable construction by the courts, to the end that the objects and purposes of [the Workers' Compensation Law] may be realized and attained." However, even though the courts now construe the Workers' Compensation Law liberally in favor of the injured employee or beneficiary, *Crew v. First Source Furniture Grp.*, 259 S.W.3d 656, 664 (Tenn. 2008); *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918, 921 (Tenn. 2007), we have held consistently that the burden of proving the entitlement to workers' compensation benefits is always on the injured employee or beneficiary. *See, e.g., Excel Polymers, LLC v. Broyles*, 302 S.W.3d 268, 274 (Tenn. 2009);

---

[5](...continued)
technician was assigned a Sears van which he drove to his customers' houses during the day and then parked in his driveway at night. At the end of each day, another Sears employee came to the technician's home to collect the payments received during the day, to restock the van with parts, and to provide the technician with his service calls for the next day. The technician was assaulted and robbed one evening in his driveway while he was preparing his van for the next day. He was wearing his Sears uniform at the time. Based on these facts, the Court invoked the street risk doctrine because "[i]t is . . . reasonable to conclude Plaintiff was targeted for attack because of his association with Sears, and in hope that this association would sweeten the fruits of the crime." *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d at 499.

*Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008); *Whirlpool Corp. v. Nakhoneinh*, 69 S.W.3d 164, 168 (Tenn. 2002).[6]

Professor Larson has correctly noted that the effect of placing the burden of proof on the injured employee with regard to injuries caused by neutral risks generally results in requiring the employee, rather than the employer, to bear the loss. 1 *Larson's Workers' Compensation Law* § 4.03, at 4-3. While he has also noted that the cases are now "more evenly divided" with regard to the compensability of neutral assaults,[7] many of the cases finding compensability are based either on a statutory presumption that an assault occurring on the work premises is work-related or on the fact that the nature of the employee's work exposed the employee to the risk of assault. In cases where an employee sustains an injury at work from a neutral risk and there is no evidence that the risk was connected personally to the employee, the "positional risk" doctrine permits the employee to recover because the slender connection with the employee's work "is at least stronger than any connection with the [employee's] personal life." 1 *Larson's Workers' Compensation Law* § 4.03, at 4-3.

Tennessee's courts have recognized that the Workers' Compensation Law does not render an "employer an insurer against every accidental injury . . . occurring during employment." *Scott v. Shinn*, 171 Tenn. 478, 483, 105 S.W.2d 103, 105 (1937). Thus, Tennessee's courts have consistently held that "the mere presence of the employee at the place of injury because of employment will not alone result in the injury being considered as arising out of employment." *Lennon Co. v. Ridge*, 219 Tenn. 623, 636, 412 S.W.2d 638, 644 (1967) (quoting *Knox v. Batson*, 217 Tenn. 620, 631, 399 S.W.2d 765, 770 (1966)); *see Jackson v. Clark & Fay, Inc.*, 197 Tenn. 135, 137, 270 S.W.2d 389, 390 (1954); *Thornton v. RCA Serv. Co.*, 188 Tenn. 644, 646, 221 S.W.2d 954, 955 (1949). Based on these settled holdings, this Court has repeatedly rejected a general application of the positional risk doctrine. *Bell v. Kelso Oil Co.*, 597 S.W.2d 731, 734 (Tenn. 1980); *Hudson v. Thurston*

---

[6]When an employee presents some evidence that his or her injury arose out of and occurred in the course of his or her employment, the courts will resolve any reasonable doubt about whether the injury arose out of the employment in the employee's favor. *DeBow v. First Inv. Prop., Inc.*, 623 S.W.2d 273, 275 (Tenn. 1981). However, this principle does not apply without some evidence. As this Court noted, "[t]he liberal construction rule applying to workers' compensation cases is not broad enough to supply proof where none exists." *Legions v. Liberty Mut. Ins. Co.*, 703 S.W.2d 620, 623 (Tenn. 1986).

[7]1 *Larson's Workers' Compensation Law* § 8.03[3], at 8-67. Of the twenty jurisdictions cited by Professor Larson, eight jurisdictions permitted recovery based on the positional risk doctrine; four jurisdictions permitted recovery based on statutes that lack a counterpart in Tennessee; and seven jurisdictions used the street risk doctrine to conclude that the assault arose out of the employment. The case cited by Professor Larson as an example of Ohio law is actually a case from Indiana. Although not cited by Professor Larson, the District of Columbia employs a statutory presumption of compensability based on the positional risk doctrine. *Clark v. D.C. Dep't of Emp't Servs.*, 743 A.2d 722, 728 (D.C. 2000).

*Motor Lines, Inc.*, 583 S.W.2d at 599-600; *Lennon Co. v. Ridge*, 219 Tenn. at 636, 412 S.W.2d at 644.

The presumption that Ms. Padilla asks us to adopt is another variant of the positional risk doctrine. It would enable employees who are injured at work by a neutral risk to recover simply because they were injured at work. It would also dispense with the requirement that the injured employee or beneficiary prove that the injury arose out of the work. Rather than supporting Ms. Padilla's proposed presumption, our case law squarely rejects it. Accordingly, we decline Ms. Padilla's request to depart from our past precedents and leave it to the General Assembly to engraft such a presumption onto the Workers' Compensation Law if it so chooses.

## VI.

We affirm the judgments of the Special Workers' Compensation Appeals Panel and the trial court and remand the case to the trial court for whatever proceedings consistent with this opinion may be required. We tax the costs of this appeal to Ana R. Padilla and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE