# IN THE SUPREME COURT OF TENNESSEE
# SPECIAL WORKERS' COMPENSATION APPEALS PANEL
# AT NASHVILLE
### September 19, 2011 Session

## LARRY KENNETH HALE v. INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA ET AL.

### Appeal from the Chancery Court for Wilson County
### No. 09441     C. K. Smith, Chancellor



### No. M2011-00504-WC-R3-WC - Mailed - November 23, 2011
### Filed - February 16, 2012

Pursuant to Tennessee Supreme Court Rule 51, this workers' compensation appeal has been referred to the Special Workers' Compensation Appeals Panel for a hearing and a report of findings of fact and conclusions of law. The employee fell and struck both knees on a concrete landing in the course of his employment with the employer. His left knee required surgery and his right knee received limited medical treatment. The treating physician assigned 8% permanent impairment to the left leg. Employee's evaluating physician assigned 13% impairment to the left leg and 20% impairment to the right leg. The trial court adopted the evaluating physician's opinions and awarded 50% permanent partial disability to both legs. Employer argues on appeal that the trial court erred by finding that Employee sustained a permanent injury to his right knee, by adopting the impairment rating of Dr. Landsberg over that of Dr. Gavigan for the left knee injury, by failing to find that Employee had a meaningful return to work, and by granting an excessive award of benefits. We affirm the judgment.

**Tenn. Code Ann. § 50-6-225(e) (2008) Appeal as of Right; Judgment of the Chancery Court Affirmed**

E. RILEY ANDERSON, SP. J., delivered the opinion of the Court, in which SHARON G. LEE, J., and DONALD P. HARRIS, SR. J., joined.

Stephen W. Elliott and Fetlework Balite-Panelo, Nashville, Tennessee, for the appellants, Insurance Company of the State of Pennsylvania and Vought Aircraft Industries, Inc.

William Joseph Butler and Frank D. Farrar, Lafayette, Tennessee, for the appellee, Larry Kenneth Hale.

**MEMORANDUM OPINION**

**Factual and Procedural Background**

On April 24, 2009, Larry Hale ("Employee") tripped over a panel and fell on his knees on a concrete landing in the course of his employment with Vought Aircraft Industries Inc. ("Employer"). He reported his injuries and received first aid at the workplace for abrasions to both knees, which were swollen and painful. His symptoms did not improve, and he was referred to Dr. Jim L. Scott at Concentra Medical Center for further treatment. His treatment consisted of medication and physical therapy for both knees, and his work was modified. However, he continued to experience swelling and pain and limitation of motion in both knees and a limp. On May 28, 2009, Dr. Scott ordered an MRI, which revealed, among other things, a tear of the lateral and medial meniscus of the left knee.

On June 10, 2009, Employee was referred to Dr. William Gavigan, an orthopaedic surgeon, for further evaluation and treatment. Dr. Gavigan examined him and found effusion, tenderness, and limited motion in the left knee with a mild left side limp. On June 29, 2009, Dr. Gavigan performed arthroscopic surgery to repair the torn cartilage of the left knee and found a complex tear involving most of the lateral meniscus and a free margin tear of the medial meniscus. Dr. Gavigan also performed a chondroplasty that constituted shaving the back of the patella or kneecap.

Dr. Gavigan continued to treat Employee until September 28, 2009, when he released Employee from his care. He assigned a permanent anatomical impairment of 8% to the left leg due to the injury and surgery and placed no permanent restrictions on Employee's activities. Although the right knee was swollen and tender, Dr. Gavigan did not treat it and testified that he did not believe treatment was needed during the time Employee was in his care.

Employee returned to work for Employer in the same position he previously held and continued to have the same job at the time of the trial in January 2011. On July 1, 2010, Employer was purchased by another entity, Triumph Aerostructures.

At trial, Employee testified that he was sixty-five years old, attended school through the tenth grade, and later obtained a GED with some difficulty. He worked for Employer and its predecessor companies for forty-three years. Employee testified that he had swelling, pain, limited motion, and "crunching and popping" in both knees, that the physical therapy ordered by Dr. Scott included both knees and that he continued to have symptoms in both knees when he saw Dr. Gavigan. He further attested that he asked Dr. Gavigan to provide treatment to the right knee, but the doctor had declined because "they . . . told him to do the

-2-

left knee only." On cross examination, Employee agreed that he was performing the same job and receiving the same pay as before the injury and that a co-employee helped him perform his job. He confirmed that he had testified during his discovery deposition that he had not requested medical treatment for his right knee because he did not consider his right knee problems to be serious enough to require treatment.

Dr. Robert Landsberg, an orthopaedic surgeon, performed an independent medical examination on Employee on October 26, 2009, and found atrophy in each thigh and flexion deformity, swelling, tenderness, and crepitus, or crunching and grinding, in both knees. Using the same section of the American Medical Association Guides to the Evaluation of Permanent Impairment, Sixth Edition ("AMA Guides"), used by Dr. Gavigan, Dr. Landsberg assigned an impairment of 13% to the left leg because of the work injury and later surgery. Dr. Landsberg explained that the "default" rating for a medial meniscus injury and surgery is 10% to the leg. Dr. Gavigan had modified the rating to 8% because he "thought [Employee] was doing well." Dr. Landsberg, on the other hand, increased the rating up to 13% because Employee "had a limp and some decreased motion."

It was also Dr. Landsberg's opinion that Employee had sustained a 20% permanent impairment of the right leg as a result of the April 2009 fall. He stated that Employee "mainly had arthritic problems with decreased range of motion" in the right knee and that "arthritis was advanced in each knee . . . by his work injury." As permanent restrictions, Dr. Landsberg recommended "no squatting, no crawling, no kneeling with either knee, minimal climbing, alternate standing, walking, and occasional sitting if necessary" and further stated as follows:

> [I]f he's sitting, he should get up and move around every half hour to one hour or so and move around for a few minutes. If he's standing, he should sit every half hour to an hour and the same thing with walking. He should alternate. He shouldn't walk much more than fifteen minutes at a time to twenty minutes at a time.

The trial court found that Employee injured both knees as a result of the April 2009 fall and sustained a 50% permanent partial disability to both legs. The trial court held that the one and one-half times impairment cap set out in Tennessee Code Annotated section 50-6-241(d) did not apply because of the acquisition of Employer by Triumph Aerostructures.

On appeal, Employer contends that the trial court erred by finding that Employee sustained a permanent injury to his right knee, by adopting the impairment rating of Dr.

Landsberg over that of Dr. Gavigan for the left knee injury, by failing to find that Employee had a meaningful return to work, and by granting an excessive award of benefits.

**Standard of Review**

We review the trial court's factual findings "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-225(e)(2). Following this standard, we "examine, in depth, a trial court's factual findings and conclusions." Crew v. First Source Furniture Grp., 259 S.W.3d 656, 664 (Tenn. 2008) (quoting Galloway v. Memphis Drum Serv., 822 S.W.2d 584, 586 (Tenn. 1991)). We accord considerable deference to the trial court's findings of fact based upon its assessment of the testimony of witnesses it heard at trial, although not so with respect to depositions and other documentary evidence. Padilla v. Twin City Fire Ins. Co., 324 S.W.3d 507, 511 (Tenn. 2010); Glisson v. Mohon Int'l, Inc./Campbell Ray, 185 S.W.3d 348, 353 (Tenn. 2006). We review conclusions of law de novo with no presumption of correctness. Wilhelm v. Krogers, 235 S.W.3d 122, 126 (Tenn. 2007). Although workers' compensation law must be liberally construed in favor of an injured employee, the employee must prove all elements of his or her case by a preponderance of the evidence. Crew, 259 S.W.3d at 664; Elmore v. Travelers Ins. Co., 824 S.W.2d 541, 543 (Tenn. 1992).

**Analysis**

*Right Knee Injury*

Employer contends that the trial court erred by finding that Employee sustained a permanent injury to the right knee and by adopting Dr. Landsberg's impairment rating for Employee's right knee injury. Employer asserts that the injury to Employee's right knee was less serious than that to his left knee. That argument is consistent with the medical records, which include statements that Employee's left knee was his primary problem. It is not disputed that Employee received only limited medical treatment for the right knee. In light of these considerations, Employer argues that it is illogical to adopt a larger impairment for the right leg than for the more seriously injured left leg.

Employer relies upon Conger v. U.S. Food Service, Inc., No. W2005-00123-WC-R3-CV, 2006 WL 1816236 (Tenn. Workers' Comp. Panel May 1, 2006). In that case, the employee suffered a back injury and a secondary injury to his bowel as a result of the same event. Id. at *2. The bowel injury received limited medical attention prior to the testimony of a primary care physician that a permanent bowel injury had occurred. Id. Unlike the present case, the employer sought an independent medical evaluation concerning the

-4-

untreated condition, but that application was denied by the trial court. Id. at *4. The Panel found that the trial court erred by denying that application and reversed. Id., at *6. We find that Conger has no application to the present case. The only similarity between the two cases is the presence of a secondary injury which received little or no medical treatment. The legal issue presented in Conger was entirely different from, and is not relevant to, the issue presented here.

As a part of the proof in this case, Dr. Landsberg testified that when he examined Employee on October 26, 2009, he found atrophy in each thigh and flexion deformity, swelling, tenderness, and crepitus in both knees. He stated that Employee had mainly arthritic problems with decreased range of motion in the right knee, which had been advanced by his work injury. As a result, Dr. Landsberg recommended permanent activity restrictions.

Employee testified at trial that he injured both his right knee and left knee in April 2009, that he received medical treatment for over six weeks, including medication and physical therapy for both knees, and that his symptoms did not improve. After he was referred to Dr. Gavigan on June 10, 2009, he requested treatment for the right knee but the request was denied because Dr. Gavigan had been instructed to treat the left knee only. There was other evidence in the record that was somewhat inconsistent with that testimony. The trial court, however, found that Employee was a credible witness and on that basis concluded that a right knee injury had occurred. We are unable to conclude that the evidence preponderates against that finding.

Having found that a compensable permanent injury existed, the trial court necessarily had to determine the anatomical impairment as a prerequisite to fixing permanent disability. Tenn. Code Ann. § 50-6-241(d). Dr. Landsberg's testimony was the *only* evidence before the court which addressed that issue. In the absence of any other medical testimony on the subject, we conclude that the evidence does not preponderate against the trial court's decision adopting the impairment rating of Dr. Landsberg. See Berry v. Armstrong Wood Prods., No. W2009-02070-WC-R3-WC, 2011 WL 666138, at *6 (Tenn. Workers' Comp. Panel Feb. 16, 2011); Pillers v. Josten's Printing & Publ'g, No. M2003-02919-SC-WCM-CV, 2005 WL 995227, at *3 (Tenn. Workers' Comp. Panel Apr. 29, 2005).

*Left Knee Impairment*

Employer contends that the trial court erred by adopting Dr. Landsberg's impairment rating for Employee's left knee over that of Dr. Gavigan. Employer argues that, as a treating physician, Dr. Gavigan observed Employee over a longer period of time and had the

opportunity to directly view the anatomy of his knee during surgery. Employee responds by noting that Dr. Landsberg examined Employee last and found atrophy in each thigh and flexion deformity, swelling, tenderness, and crepitus in both knees.

Dr. Landsberg has been trained and certified as a member of the panel of the Tennessee Department of Labor and Workforce Development to evaluate worker impairments using the AMA Guides. Dr. Gavigan did not have this certification. Dr. Landsberg based his impairment rating on a "Lower Limb Questionnaire" filled out by Employee, a Functional History Modification, Physical Examination Modification or Clinical Studies Modification table which are part of the evaluation process described in the AMA Guides. Dr. Gavigan did not use and was not familiar with the "Lower Limb Questionnaire." He either did not use or did not mention in his report or testimony the history, the physical examination or the physical studies table. The trial judge noted that Dr. Landsberg seemed more learned about the AMA Guides.

A trial court generally has the discretion to choose which expert to accredit when there is a conflict of expert opinions. Kellerman v. Food Lion, Inc., 929 S.W.2d 333, 335 (Tenn. 1996); Johnson v. Midwesco, Inc., 801 S.W.2d 804, 806 (Tenn. 1990). In this case, both doctors testified by deposition, so we are able to reach our own conclusions concerning the weight to be accorded to each. Padilla, 324 S.W.3d at 511; Glisson, 185 S.W.3d at 353. We have independently reviewed the medical evidence and conclude that it does not preponderate against the trial court's finding in this case.

*Meaningful Return to Work*

Employer argues that the award of permanent disability benefits should have been limited to one and one-half times the anatomical impairment in accordance with Tennessee Code Annotated section 50-6-241(d)(1)(A), because Employee returned to work at the same job after recovering from his injury. The undisputed evidence at trial was that Employer was acquired by another corporate entity, Triumph Aerostructures, after the date of Employee's injury. The Supreme Court and recent workers' compensation court panels have consistently held that the lower cap on disability awards does not apply when the pre-injury employer is purchased by or merged with another entity.[1] Barnett v. Milan Seating Sys., 215 S.W.3d 828 (Tenn. 2007); Cook v. Gen. Motors Corp., No. M2010-00272-WC-R3-WC, 2011 WL 590456 (Tenn. Workers' Comp. Panel Feb. 16, 2011); Day v. Zurich Am. Ins. Co., No. W2009-01349-WC-R3-WC, 2010 WL 1241779 (Tenn. Workers' Comp. Panel Mar. 31, 2010). We therefore find this argument to be without merit.

---

[1] Because Employee's injury occurred before July 1, 2009, Tennessee Code Annotated section 50-6-241(d)(1)(C)(i), which would mandate the opposite result, does not apply to this case.

*Excessive Award*

Finally, Employer argues that the award of 50% permanent partial disability to both legs is excessive, asserting that Employee is still working at the same job with the same pay as before the injury and that he has no plans to retire.

In assessing the extent of an employee's vocational disability, "the trial court shall consider all pertinent factors, including lay and expert testimony, the employee's age, education, skills and training, local job opportunities, capacity to work at the kinds of employment available in his or her disabled condition." Tenn. Code Ann. § 50-6-241(2)(A) (2008); see also Worthington v. Modine Mfg. Co., 798 S.W.2d 232, 234 (Tenn.1990) ("the trial court must determine the extent of unscheduled vocational disability by considering many factors, including job skills, education, age, training, duration of disabilities, anatomical disabilities established by medical experts, and local job opportunities for the disabled."); Roberson v. Loretto Casket Co., 722 S.W.2d 380, 384 (Tenn.1986) ("the assessment of permanent total disability is based upon numerous factors, including the employee's skills and training, education, age, local job opportunities, and his capacity to work at the kinds of employment available in his [or her] disabled condition.").

In Corcoran v. Foster Auto GMC, Inc. 746 S.W.2d 452, 458 (Tenn. 1988), our Supreme Court observed that "[i]n determining vocational disability, the question is not whether the employee is able to return to the work being performed when injured, but whether the employee's earning capacity in the open labor market has been diminished by the residual impairment caused by a work-related injury."

Employee testified that he was sixty-five years old at the time of trial, finished the ninth grade and left school in the tenth grade, and later obtained a GED with some difficulty. He had worked for a single employer for more than forty years, performing physical labor and had no specialized training. He testified that he had worked at other jobs involving physical labor in the past but would be unable to perform them now because of his physical restrictions. He also testified that he had pain and swelling in both knees and limited range of motion. He still walked with a limp and was unable to observe the activity restrictions while at work. Dr. Landsberg recommended significant activity restrictions as a result of the injury. Considering the record as a whole, we conclude that the evidence does not preponderate against the trial court's finding that Employee had a 50% permanent partial disability to both legs.

**Conclusion**

The judgment of the trial court is affirmed. Costs are taxed to Insurance Company of the State of Pennsylvania and Vought Aircraft Industries, Inc., and their sureties, for which execution may issue if necessary.

_____
E. RILEY ANDERSON, SPECIAL JUDGE

# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

**LARRY KENNETH HALE v. INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA ET AL.**

**Chancery Court for Wilson County**
**No. 09441**

---

**No. M2011-00504-SC-WCM-WC - Filed - February 16, 2012**

---

## ORDER

This case is before the Court upon the motion for review filed on behalf of Insurance Company of the State of Pennsylvania and Vought Aircraft Industries, Inc. pursuant to Tenn. Code Ann. § 50-6-225(e)(5)(A)(ii), the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law.

It appears to the Court that the motion for review is not well-taken and is therefore denied. The Panel's findings of fact and conclusions of law, which are incorporated by reference, are adopted and affirmed. The decision of the Panel is made the judgment of the Court.

Costs are assessed to Insurance Company of the State of Pennsylvania and Vought Aircraft Industries, Inc., and their sureties, for which execution may issue if necessary.


PER CURIAM


SHARON G. LEE, J., not participating.