**FILED**

**September 23, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 4:10 PM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **Michael Wood,** | ) | **Docket No.: 2015-06-0078** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 7588-2015** |
| **Mac Constructors, LLC,** | ) | |
| **Employer,** | ) | **Chief Judge Kenneth M. Switzer** |
| **And** | ) | |
| **Bridgefield Casualty Insurance Co.** | ) | |
| **Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

This matter came before the undersigned workers' compensation judge on the Request for Expedited Hearing filed by the employee, Michael Wood, pursuant to Tennessee Code Annotated section 50-6-239 (2014). The present focus of this case is the compensability of an injury occurring during a physical confrontation between Mr. Wood and an employee of another company. The central legal issue is whether this injury, resulting from an assault, arose primarily out of and in the course and scope of employment. For the reasons set forth below, the Court finds that it did. The Court grants additional medical benefits, but denies Mr. Wood's request for temporary disability benefits. At this time, the Court cannot rule regarding reimbursement of past medical bills.[1]

---

[1] At the Expedited Hearing, the Court observed that its file contained copies of medical bills, and inferred that Mr. Wood seeks reimbursement. However, the Court cannot rule on this request because the Dispute Certification Notice does not list Mr. Wood's entitlement to past medical expenses as an issue for adjudication. (T.R. 3 at 2, 4.) "Only issues that have been certified by a workers' compensation mediator within a dispute certification notice may be presented to the workers' compensation judge for adjudication." Tenn. Code Ann. § 50-6-239(b)(1) (2014); *Dorsey v. Amazon.com, Inc.*, No. 2015-01-0017, 2015 TN Wrk. Comp. App. Bd. LEXIS ___, slip op. at 4 (Tenn. Work. Comp. Bd. May 14, 2015).

## History of Claim

Mr. Wood is a sixty-two year-old resident of Wilson County. (T.R. 1 at 1.) He worked for employer, Mac Constructors (Mac), as a lowboy truck driver. *Id.* Mr. Wood testified that, on January 15, 2015, his work truck had two flat tires. Mac's owner, Richard McAdams, instructed him to go to Gateway Tire & Service Center in Franklin, Tennessee to have them repaired. Mr. Wood took the tractor from his eighteen-wheeler to Gateway.

Shortly after his arrival, he explained to the tire technician, Taylor Wise, which tires needed repair. He pointed out they were on the same axle and must be aligned in such a way as to make checking the air pressure easier by placing the valve stems close together. In response, Mr. Wise "come running up in my face," swore at him and told him to leave the work area. Mr. Wise proceeded to ask Peter Hughes, Gateway's shop foreman, to speak with Mr. Wood. Mr. Hughes told them both to stop using foul language. He told Mr. Wood privately that Mr. Wise was acting "wirey" that day, and, "We don't know what's wrong with him." In subsequent testimony, Mr. Hughes said he did not remember, and then denied, making such statements. Mr. Hughes said he overheard Mr. Wood using profanity.[2]

When the repairs were almost completed, Mr. Wood followed Mr. Wise from inside the shop to the truck in the work area to obtain and sign a ticket verifying the job's completion. According to Mr. Wood, Mr. Wise waved the ticket at him but refused to hand it to him. Mr. Wood reached for it, and their hands made contact. While Mr. Wood looked away, Mr. Wise struck him from behind, knocking him, at least partially, to the ground and briefly leaving him unconscious. He then "kneed" him in the face, placed him in a headlock and dragged him to the side of the truck. Mr. Hughes came out of the shop to the work area, and the altercation ceased. After another worker finished making the repairs, Mr. Wood left.

Mr. Wood testified he and Mr. Wise were not personal acquaintances, and he only knew Mr. Wise through business transactions at gateway on Mac's behalf. Approximately six times over three years, Gateway serviced Mr. Wood's trucks without incident. Mr. McAdams terminated Mr. Wood following the incident. Mr. Wood denied any issues with Mr. McAdams' customers, specifically Turnberry Homes, which Mr. McAdams characterized in his subsequent testimony as a primary client. Mr. Wood denied knowing an individual named "Dale Sullivan," and he did not recognize Mr. Sullivan during his testimony. Mr. Wood admitted he knew fighting on the job was improper, and denied that he cussed during the encounter with Mr. Wise.

Mr. Wise's testimony presented a substantially differing factual scenario. He stated that Mr. Wood appeared "very frantic" upon his arrival at Gateway, causing him to

---

[2] Mr. Hughes testified that he did not witness the actual altercation. The remainder of his testimony offered hearsay, cumulative or irrelevant information, and therefore the Court does not recount it in this Order.

2

tell Mr. Hughes privately that they had a customer who was "not too happy." As Mr. Wise wrote on the work receipt, Mr. Wood approached him, cussed, and pushed him. Mr. Wise pushed him back "just to defend myself," and Mr. Wood fell to the ground, tripping over his own feet. As Mr. Wood arose, Mr. Wise restrained him, while another employee went to get Mr. Hughes. While waiting for Mr. Hughes to arrive, Mr. Wood held a pen to Mr. Wise's throat, threatening to kill him. On cross-examination, Mr. Wise stated he had not filled out the ticket yet, and that was why he did not immediately hand it to Mr. Wood. He denied striking Mr. Wood, and insisted Mr. Wood tripped over his own feet.

Mac offered the testimony of Mr. Sullivan, a former Mac employee, to contradict Mr. Wood's denial of a prior physical confrontation at work. He testified that, at some time prior to the alleged date of injury, Mr. Wood placed his hands around his neck and shook/shoved him for walking in front of him.

Mr. McAdams testified that he spoke with Mr. Sullivan and Mr. Wood after the altercation. He additionally related, without hearsay objections, two different verbal confrontations involving Mr. Wood and employees of Turnberry Homes. After the first altercation, he warned Mr. Wood to stop instigating conflicts with a major client, but not after the second. Mr. McAdams later stated he gave Mr. Wood three prior warnings about the potential for dismissal as a consequence for rules violations. On cross-examination, Mr. McAdams stated he thought Mr. Wood received one written warning but was not sure. He maintained the other warnings were verbal.

Mr. McAdams also testified that, after the altercation with Mr. Wise, he told Mr. Wood he must obtain permission from a physician to return to work. Mr. Wood telephoned him approximately one week later, stating a physician released him. Rather than inviting Mr. Wood back to work, Mr. McAdams terminated him.

Mr. Wood sought unauthorized care at Summit Medical Center. (Ex. 1 at 2.) The only record from this visit is a work excuse for January 17-18, 2015. *Id.* Although neither party introduced a "Choice of Physicians" form into evidence, Mr. Wood acknowledged on the Petition for Benefit Determination (PBD) that Mac provided a panel. (T.R. 1 at 2.) Mac authorized medical care from February 2-6, 2015, at Concentra. (Ex. 1 at 3-22.)

Dr. William Dutton wrote after the initial visit, "Patient states: 'gateway [sic] employee assaulted me when I turned my head, knocked me out from behind when I was coming to.'" *Id.* at 3. Dr. Dutton placed him on restricted duty. *Id.* at 4, 5. Mr. Wood saw Dr. Joseph Speake on February 4, 2014, who noted, "he states there was an arguement [sic] at Gateway and next thing he knew he was getting kneed in the forarm [sic] while trying to protect himself." *Id.* at 15. Dr. Speake continued the restrictions, concluding that Mr. Wood could likely return to full duty in a week. *Id.* According to Mr. Wood and the medical records, authorized providers never released him to return to

work full-duty. Mr. Wood offered no testimony or medical records regarding his present condition.

Mac denied the claim on February 6, 2015. (Ex. 5.) Mr. Wood filed a PBD seeking medical and temporary disability benefits. (T.R.1 at 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. (T.R. 3.) This Court heard the matter on September 10, 2015. At the Expedited Hearing, Mr. Wood asserted the assault was work-related. Mac countered that the encounter between Mr. Wood and Mr. Wise was "personal" and did not arise primarily out of and in the course and scope of employment, thereby making the injury noncompensable. Mac further argued that Mr. Wood's claim is barred because he engaged in willful misconduct.

### Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987)[3]; *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

"Injury" is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes . . . the need for medical treatment of the employee." Tenn. Code Ann. § 50-6-102(13) (2014). The statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys.,* 164 S.W.3d 350, 354 (Tenn. 2005).

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

4

An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. App. Panel 1993). Thus, the course of employment requirement focuses on the time, place and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005).

In this case, the Court finds that Mr. Wood appeared steady, forthcoming, reasonable and honest, which characteristics, according to the Tennessee Supreme Court, are indicia of reliability. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014). Mr. Wood credibly testified that he sustained injuries resulting from an assault that occurred while performing a job duty in accordance with Mac's explicit instruction and securing a necessary repair to his work truck. His testimony, Affidavit, and statements to physicians within the medical records are consistent regarding the significant events. (Ex. 1 at 3, 15.) The Court finds Mr. Wood recounted the time, place and circumstances of the injury in sufficient detail to establish it occurred in the course of his employment.

Mac did not refute that Mr. Wood was at Gateway under its direction, or contest the time and place of the injury, but instead drew attention to the circumstances of the injury by questioning Mr. Wood's credibility and characterizing him as the aggressor. Mac contends Mr. Wood is not credible because it presented two witnesses who contradicted his testimony regarding previous, similar incidents with co-employees and customers.

To the undersigned, who observed all of Mac's witnesses, only Mr. Sullivan appeared credible. However, he conveyed scant details about the incident between himself and Mr. Wood. Even if this Court were to accept Mr. Sullivan's account, this prior incident does not significantly damage Mr. Wood's credibility regarding the events of January 15, 2015. This is especially true, since Mr. Wise confirmed an altercation on that date arising from Mr. Wood's employment relationship with Mac.

The Court finds Mr. McAdams was not credible. Importantly, he did not witness the incident in question. Further, his testimony of Mr. Wood's prior offenses, except for the altercation with Mr. Sullivan, lacked detail. Even though Mr. Wood did not object to these hearsay recitations, the Court must still assess the internal consistency of the descriptions of these incidents. Mr. McAdams' testimony about the incidents with Turnberry employees did not specify when and with whom these events occurred, nor did Mac offer any written contemporaneous documentation of the events. In fact, Mr. McAdams admitted, under very limited cross-examination, that he provided no written warnings, and it remains unclear to this Court the number of verbal warnings he allegedly gave. Having observed Mr. McAdams' demeanor, the court discounts the majority of his testimony. The Court finds Mr. Wood has met his burden of establishing his injury occurred in the course and scope of his employment.

The determinative issue becomes whether Mr. Wood's injury arose primarily out of his employment. "Arising out of employment" refers to causation. *Reeser v. Yellow*

*Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Stated another way, an injury arises out of employment when it "has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 498 (Tenn. 1992).

With regard to causation as it relates to workplace assaults, the Tennessee Supreme Court recognized the following three categories:

> (1) [A]ssaults with an "inherent connection" to employment, such as disputes over performance, pay or termination;
> (2) [A]ssaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment; and,
> (3) [A]ssaults resulting from a "neutral force" such as random assaults on employees by individuals outside the employment relationship.

*Woods v. Harry B. Woods Plumbing Co.*, 967 S.W.2d 768, 771 (Tenn. 1998). The assault in this matter falls into the third category: It resulted from a neutral force in the form of a random assault on Mr. Wood by Mr. Wise, an individual outside of his employment with Mac. The compensability of assaults falling into this third category "depend[s] on the facts and circumstances of the employment." *Id.* at 771.

Mac cloaked its arguments as a credibility issue, but essentially argued that Mr. Wood caused the assault by his words and actions, making the event "personal" and therefore noncompensable. This Court is unpersuaded. The Supreme Court in *Woods* explicitly abrogated the aggressor defense. *Id.* at 772. Further, the primary purpose of the Workers' Compensation Law is "to afford workers compensation for job related injuries regardless of fault." *Duncan v. State,* No. E2003-01898-WC-R3-CV, 2004 Tenn. LEXIS 676, at *7-8 (Tenn. Workers' Comp. Panel Aug. 27, 2004); *see* Tenn. Code Ann. § 50-6-103(a) (2014) ("Every employer and employee subject to this chapter, shall, respectively, pay and accept compensation for personal injury or death by accident arising primarily out of and in the course of employment *without regard to fault as a cause of the injury*[.] (Emphasis added.))

Mr. Wood's injuries from the assault bear a rational, causal connection to his work with Mac because he sustained them while securing a necessary repair on the truck, upon Mac's direction, so that he could return to his principal duties of driving the truck. Further, the assault occurred while Mr. Wood attempted to obtain a repair receipt to provide to Mac. The Court concludes at this time that, as a matter of law, Mr. Wood has come forward with sufficient evidence that he is likely to prevail at a hearing on the merits with regard to whether a compensable event occurred.

Having found that Mr. Wood sustained an injury arising primarily out of and in the course and scope of employment, the Court now turns to Mac's willful misconduct affirmative defense. The Workers' Compensation Law recognizes that, in some instances, a worker's willful misconduct can preclude a recovery. *See* Tenn. Code Ann. § 50-6-110(a)(1) (2014). The willful misconduct defense consists of four elements: (1) the employee's actual, as opposed to constructive, notice of the rule, (2) the employee's understanding of the dangers involved in violating the rule, (3) the employer's bona fide enforcement of the rule, and (4) the employee's lack of a valid excuse for violating the rule. *Mitchell v. Fayetteville Public Utilities*, 368 S.W.3d 442, 453 (Tenn. 2012). The burden of establishing the defense rests upon the employer. Tenn. Code Ann. § 50-6-110(b) (2014).

The Court concludes that Mac's affirmative defense fails. Mac provided no clear proof of a "rule," other than supposed warnings from Mr. McAdams, which the Court discounted based on his dubious credibility. Mac failed to introduce evidence of an employee handbook or any other documentation of the rule's existence. Mac further failed to demonstrate a bona fide enforcement of such a rule, with regard to Mr. Wood or any Mac employee. If such enforcement existed, Mac would have discharged Mr. Wood after the altercation with Mr. Sullivan. In addition, even assuming there was such a rule, the Court does not find that Mr. Wood violated it.

With regard to Mr. Wood's requested relief, and in particular, medical benefits, the Workers' Compensation Law requires an employer to provide medical care, free of charge to the employee, made reasonably necessary by a work-related injury. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). Mac complied with this provision until the denial, which took place, according to Mr. Wood's testimony and the medical records, before Concentra physicians released him. Mr. Wood is entitled to additional medical benefits, namely, a follow-up visit to Concentra, so that those physicians may determine what, if any, medical treatment remains reasonable and necessary.

As for temporary disability benefits, the Workers' Compensation Law allows temporary total disability benefits under Tennessee Code Annotated section 50-6-207(1) (2014) when the disability is "total" and the employee is "unable to work as a result of a compensable injury." *See Gray v. Cullom Mach., Tool & Die, Inc.*, 152 S.W.3d 439, 443 (Tenn. 2004); *Jewell v. Cobble Construction and Arcus Restoration,* No. 2014-05-0003, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015). The medical records indicate that Summit providers excused Mr. Wood from work for two days, January 17 and 18, 2015. However, the Workers' Compensation Law provides for no compensation for the first seven days of disability. Tenn. Code Ann. § 50-6-205(a) (2015). The Concentra physicians did not excuse him from work, but restricted his work activities. Thus Mr. Wood is not entitled to temporary total disability benefits.

Tennessee Code Annotated section 50-6-207(2) (2014) provides for temporary partial disability during the time period in which the injured employee is able to resume some gainful employment in a disabled condition, but has not reached maximum recovery. *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005); *Jewell,* 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21. To establish entitlement to temporary partial disability benefits, the employee has the burden to show he had been assigned temporary work restrictions that rendered him partially disabled, and the partial disability resulted in a reduced ability to work because the employer was unwilling or unable to return the injured worker to work at or above his average weekly wage. *Williams*, 2005 Tenn. LEXIS 1032 at *7-8.

In this case, the medical records show that Concentra providers assigned temporary work restrictions after Mr. Wood's discharge, the propriety of which was not raised as an issue, and is not properly before the Court at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. Wood's injuries shall be paid and Mac or its workers' compensation carrier shall provide Mr. Wood with additional medical treatment with Concentra for these injuries as required by Tennessee Code Annotated section 50-6-204 (2014). Medical bills shall be furnished to Mac or its workers' compensation carrier by Mr. Wood or the medical providers.

2. Mr. Wood's request for temporary disability benefits is denied at this time.

3. This matter is set for an Initial (Scheduling) Hearing on November 5th, 2015, at 9 a.m./p.m.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

8

**ENTERED** this the 23rd day of September, 2015.

_(signature)_

**Chief Judge Kenneth Switzer**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of**

**Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 23rd day of September, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Address |
|------|----------------|------------------|---------|------------|-----------|---------|
| Michael Wood, self-represented | X | | | | x | Wood.michaeljames@gmail.com; 600 Windy Rd., Mt. Juliet, TN 37122 |
| Chad Jackson, Employer/Carrier's Counsel | | | | | x | Cjackson@Morganakins.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

# APPENDIX

Exhibits:

1. Medical Records of Michael Wood
2. Affidavit of Michael Wood, July 30, 2015
3. First Report of injury, February 3, 2015
4. Wage Statement, February 2, 2015
5. Notice of Denial, February 5, 2015

Technical record:[i]

1. Petition for Benefit Determination, Feb. 25, 2015
2. Employer's Pre-Mediation Position Statement, March 12, 2015
3. Dispute Certification Notice, March 26, 2015
4. Request for Expedited Hearing, July 24, 2015
5. Employer's Witness and Exhibit List, August 25, 2015
6. Employer's Pre-Hearing Brief, August 2, 2015

---

[i] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.