## IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

FOR PUBLICATION

**Filed:** ___April 6, 1998___

REBECCA FAY WOODS,           )
HARRY B. WOODS, JR., AND      )
SHIRLEY ANN WOODS,           )
                             )       DAVIDSON CHANCERY
    PLAINTIFFS/APPELLANTS,   )           NO. 94-2388-I
                             )
v.                           )       Hon. Irvin H. Kilcrease, Jr.,
                             )           Chancellor
HARRY B. WOODS PLUMBING       )
COMPANY, INC., HARPETH        )       No. 01S01-9606-CH-00124
CONSTRUCTION CO., INC., AND   )
TRAVELERS INSURANCE COMPANY, )
                             )
    DEFENDANTS/APPELLEES.    )

FILED

April 6, 1998

Cecil W. Crowson
Appellate Court Clerk

FOR APPELLANTS:

Othal Smith, Jr.
Nashville

FOR APPELLEES, Harpeth
Construction Co., Inc. and Travelers
Insurance Company:

William G. McCaskill, Jr.
Taylor, Philbin, Pigue, Marchetti &
    Bennett
Nashville

# O P I N I O N

REVERSED AND REMANDED                              HOLDER, J.

**OPINION**

We granted this workers' compensation appeal to address two issues: (1) whether the decedent's death arose out of and in the course of employment; and (2) whether the decedent was the initial aggressor; and if so, whether the aggressor doctrine precluded recovery. We find that the decedent's death arose out of and in the course of employment. As to the second issue, we hold the common law aggressor defense as it relates to workers' compensation claims under the Act is abolished in Tennessee and does not bar the decedent's recovery.

**FACTS**

The decedent, his nephew and his son arrived at a house to perform a plumbing job. Charles Langley, Jr., was at the house performing floor renovations to the entryway when the decedent arrived. Langley had placed a sign on the front door indicating that the entryway should not be used. Langley further placed tape across the doorway between the kitchen and the entryway.

The decedent, his nephew and his son entered the house from the rear. They ducked under the tape that Langley used to cordon off the entryway and proceeded to walk across the entryway floor to gain access to the basement stairs. Langley then approached the decedent's son with a knife and threatened to kill him. The decedent and Langley had a heated exchange concerning Langley's threat to kill the decedent's son. The project supervisor intervened and was able to diffuse the situation temporarily.

2

The decedent, his nephew and his son left the house and walked toward their vehicles. The decedent spoke briefly with his son and then began walking toward Langley's van. The decedent apparently charged Langley and was intercepted by the project supervisor who again attempted to intervene. Langley, however, drew an automatic pistol and shot the decedent five times. The decedent died as a result of the gunshot wounds.

The decedent's family filed for workers' compensation benefits. The trial court found that the decedent's death arose out of and in the course of his employment. The trial court, however, held that the decedent was not entitled to recover because he became the aggressor after the initial confrontation had concluded. The trial court's judgment was affirmed by a workers' compensation panel.

**DISCUSSION**

The Tennessee Workers' Compensation Act ("Act"), Tenn. Code Ann. § 50-6-101 *et seq.*, provides the exclusive remedies for workers sustaining work-related injuries. Tenn. Code Ann. § 50-6-108. An employee's right to recover under the Act requires a finding that the injury arose "out of and in the course of employment." Tenn. Code Ann. § 50-6-102(5). The phrases "arising out of" and "in the course of" employment comprise two separate requirements. The phrase "in the course of" refers to the time, place and circumstances under which the injury occurred. McAdams v. Canale, 294 S.W.2d 696, 699 (Tenn. 1956). The phrase "arising out of" refers to an injury's origin. Id.

The "course of employment" requirement is satisfied when an injury occurs within the time and place limitations of the employment relationship and

3

during an activity that had some connection with the employee's job-related functions. The decedent had arrived at a job site where a dwelling was being renovated. He entered the dwelling at which he was to perform a plumbing job. Langley was a worker present in the dwelling when the decedent arrived. The decedent, his son and his nephew walked across a floor that Langley was renovating to gain access to the basement. Langley became irate and threatened to kill the decedent's son with a carpentry knife. The confrontation ensued until the decedent was shot at the job site outside of the dwelling. Accordingly, the decedent's death occurred during the course of the decedent's employment.

We shall now focus on whether the decedent's death arose out of his employment. An accident arises out of employment when there is a causal relationship between the employment and the injury. Orman v. Williams Sonoma, Inc., 803 S.W.2d 672, 676 (Tenn. 1991).

We believe that issues of whether assaults upon employees arise out of the scope of employment can best be divided into three general classifications: (1) assaults with an "inherent connection" to employment such as disputes over performance, pay or termination; (2) assaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment; and (3) assaults resulting from a "neutral force" such as random assaults on employees by individuals outside the employment relationship.

Assaults with an "inherent connection" to employment are compensable. See W.S. Dickey Mfg. Co. v. Moore, 347 S.W.2d 493 (Tenn. 1961) (injuries arising out of dispute over job performance compensable); Whaley v. Patent

4

Button Co., 202 S.W.2d 649 (Tenn. 1947) (injuries inflicted by ex-employees on employees while performing duties similar to those that had been performed by the ex-employee are compensable). Assaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment are not compensable. See Brimhall V. Home Insurance Co., 694 S.W.2d 931 (Tenn. 1985) (fight over use of personal items not compensable); White v. Whiteway Pharmacy, Inc., 360 S.W.2d 12 (Tenn. 1962) (employee murdered on employer premises by non-employee husband over domestic dispute non-compensable). Assaults resulting from a "neutral force" such as random assaults may or may not be compensable depending on the facts and circumstances of the employment. See Beck v. State, 779 S.W.2d 367 (Tenn. 1989) (where employment necessarily exposes employee to public risks, random assault from third party is compensable).

The altercation between the decedent and Langley originated in an argument concerning work that Langley was performing at the decedent's job site. Moreover, the entire focus of the dispute was apparently related to the employment setting. We, therefore, find that the decedent's death had an "inherent connection" to the employment setting and arose out of employment as contemplated by the Act.

The next issue with which we are confronted is: (1) whether the decedent was an initial aggressor; and, if so, (2) whether the decedent's death was rendered non-compensable by an initial aggressor defense. Both the trial court and the workers' compensation panel concluded the decedent's death was non-compensable because "[t]he decedent was the aggressor since the altercation between the parties had terminated before [the decedent] charged Langley."

5

One question that arises in work-related assaults is whether compensation should be denied an injured worker who was an aggressor. <u>See</u> 1 Larson, <u>Workmen's Compensation Law</u> 11.15(a) (1990). While "abolition of the aggressor defense is one of the most rapid doctrinal reversals . . . in compensation law," jurisdictions recognizing the doctrine deny benefits despite the fact that the injury in dispute was work-related. <u>See id</u>. at § 11.15(c). A common rationale for denial of benefits under the doctrine is that the worker's injury arose out of his act of aggression thereby negating the assertion that the injury arose out of the employment. <u>Id</u>.

A majority of jurisdictions have rejected the aggressor defense in the absence of express statutory language providing for the defense. Courts have reasoned that an aggressor defense is a purely fault-based concept borrowed from tort law and has no place in compensation law. The chain of causation is not necessarily broken by striking the first blow provided that the episode originated in the employment or the sole contact between the disputants was employment-related. <u>See generally</u> <u>Triad Painting Co. v. Blair</u>, 812 P.2d 638 (Colo. 1991); <u>Springston v. IML Freight, Inc.</u>, 704 P.2d 394 (Kan. App. 1985). One state has rejected the defense considering it a "judicially created bar to recovery imposed upon an entirely statutory remedial scheme." <u>Geeslin v. Workmen's Compensation Comm'r</u>, 294 S.E.2d 150, 152 (W. Va. 1982).

The primary purpose of our Workers' Compensation Act ("Act") is to afford workers compensation for job-related injured regardless of fault. <u>See generally</u> Tenn. Code Ann. § 50-6-103; <u>Partee v. Memphis Concrete Pipe Co.</u>, 295 S.W. 68 (1927). The Act has further been interpreted as providing for a speedy trial so as to assure quick and efficient benefits to injured workers. <u>Stovall v. General Shoe Corp.</u>, 321 S.W.2d 559 (Tenn. 1959). Moreover, the Act is based on a

6

mutual renunciation of common law rights and defenses.  Tenn. Code Ann. § 50-6-108; see Liberty Mutual Insurance Co., v. Stevenson, 368 S.W.2d 760 (Tenn. 1963) (noting Act  is complete substitute for previous remedies in tort).

We find that the Act does not explicitly provide for an initial aggressor defense.  The aggressor defense in Tennessee, therefore, is a common law creation that introduces a fault-based concept into a comprehensive statutory scheme designed not to analyze culpability but to allocate cost and ensure compensation.  See Springston, 704 P.2d at 398 (holding disapproval of employee's misconduct is not grounds for frustrating the main purpose of workers' compensation which is to prevent dependency of the claimant and his family).  An analysis requiring a determination of who threw the first punch, whether a sufficient cooling-off period had occurred between separate incidents and whether a worker reacted in excessive manner is contrary to the quick and efficient administration of disability benefits.  See Geeslin, 294 S.E.2d at 153 (noting "difficulty in characterizing one of the participants as the initial aggressor and the other as the innocent victim when faced with an escalating dispute that culminates in physical violence").  Moreover, the Act is purely a creature of the general assembly, and any change in its structure must come from the general assembly and not from the courts.  Lindsey v. Hunt, 384 S.W.2d 441 (1965), rev'd on other grounds, Bettis v. Tom Wade Gin, 810 S.W.2d 140 (Tenn. 1991). In the absence of an express statutory authorization, we hold the common law aggressor defense as it relates to workers' compensation claims under the Act is abolished in Tennessee and does not bar the decedent's recovery.  The case is reversed and remanded to the trial court for further proceedings consistent with this opinion.  The costs of this appeal shall be assessed against the defendants for which execution may issue if necessary.

_____
Janice M. Holder, Justice

**Panel:**

Anderson, C.J.
Reid, J.
Tomlin, S.J.

Drowota, J., not participating
Birch, J., not participating

8