**FILED**

**March 24, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**TIME 9:27 AM**



## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| Terrel Harris,      ) | Docket No.: 2015-06-0586 |
|     Employee,      ) | |
| v.      ) | State File No.: 60093-2015 |
| Bennett Tool & Die, LLC,      ) | |
|     Employer,      ) | Chief Judge Kenneth M. Switzer |
| And      ) | |
| Accident Fund,      ) | |
|     Insurance Carrier.      ) | |
|      ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

This case came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the employee, Terrel Harris, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Mr. Harris sustained an injury arising primarily out of and in the course and scope of his employment with Bennett Tool & Die, LLC. The central legal issue is the compensability of his claim, which stems from a workplace assault. For the reasons set forth below, the Court orders Bennett to provide Mr. Harris a panel of physicians. However, the Court declines at this time to order Bennett to reimburse Mr. Harris for expenses incurred for past medical care or to pay temporary disability benefits.[1]

### History of Claim

Mr. Harris is a fifty-one-year-old resident of Davidson County, Tennessee, who worked at Bennett as a material handler. (T.R. 1 at 1.) According to his testimony at the expedited hearing and his affidavit (Ex. 1), he began working for Bennett as a temporary employee through an employment agency. His supervisor, Troy Hogan, hired him as a permanent Bennett employee on November 11, 2014. On approximately June 15, 2015, co-workers Jacoby Robinson and William Lee, unhappy that Mr. Harris was made a permanent Bennett employee while they were not, called him the N-word and threatened

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

him physical harm.[2] Mr. Harris did not know Mr. Robinson or Mr. Lee prior to working at Bennett and said their disagreement was not "personal." Mr. Harris reported the incident to Mr. Hogan, who called all three workers into the office, but never discussed the altercation. Once they returned to work, per Mr. Harris, Mr. Robinson called him a "police ass bitch."

On or about July 7, 2015, Mr. Robinson and Mr. Lee again approached Mr. Harris, "telling me that if they didn't get hired on they was gonna f—k me up." On July 10, 2015, Mr. Harris reported the second incident to Mr. Hogan. Mr. Hogan called a meeting of all three workers, the controller/human resources director, Cortesia Johnson, and the plant manager. Mr. Harris said it was merely a thirty-minute "conversation," and then Mr. Hogan sent them all back to work without really addressing the problem.

On August 2, 2015,[3] Mr. Lee told Mr. Harris he "was gonna take my paycheck," to which Mr. Harris responded that Mr. Lee "was not gonna take s—t from me." At approximately 5:20 that afternoon, Mr. Harris stepped off a forklift and was walking toward the restroom, when Mr. Lee struck Mr. Harris "from the back of my head as I went down he was giving me body blows to my side, then he slammed me into a steel table[.] I fell to the ground and then Jacoby Robinson kicked me about 4 to 6 to 8 times." (Ex. 1.) Mr. Harris fought back to defend himself. Another worker, "Patrick," said a manager was coming as a means of stopping the fight. Mr. Harris sustained bruising to his right knee and shoulder and facial lacerations. No supervisors witnessed the altercation.

Approximately one hour later, Mr. Harris reported the incident to Mr. Hogan, who was not working that day but came in to address the matter. Mr. Harris told him he needed to go to the hospital. Mr. Hogan photographed his injuries and sent him home. Bennett did not introduce these photographs into evidence at the expedited hearing. The next morning, Bennett terminated Mr. Harris. Mr. Harris subsequently sought emergency care at Nashville General Hospital at Meharry; however, he introduced no medical records into evidence. Mr. Harris testified his facial lacerations have healed, but he continues to experience pain in his knee and shoulder.

Bennett's proof revolved around the testimony of Cortesia Johnson, its

---

[2] Bennett objected to Mr. Harris' testimony at the expedited hearing regarding statements from Mr. Lee and Mr. Robinson as hearsay. The Court overruled the objection and allowed Mr. Harris' testimony regarding their alleged statements as laying the groundwork for what his claim is about, and not necessarily as true statements regarding what was said. The Court finds these statements are not hearsay. *See State v. Brown*, 836 S.W.3d 530, 551 (Tenn. 1992). ("A statement introduced to prove only that it was made, regardless of the truth or falsity of the statement, does not violate the rule against hearsay.")

[3] Mr. Harris's affidavit lists this date as August 2, 2014. The Petition for Benefit Determination and Dispute Certification Notice list the date of injury as July 30, 2015, while the Request for Expedited Hearing lists it as August 2, 2015.

controller/human resources director, and Mr. Hogan, Mr. Harris' supervisor. Although Bennett had in its possession photographs of Mr. Harris' injuries as well as partial video footage of the assault, it chose not to introduce them into evidence. Rather, Bennett relied in part on Ms. Johnson's account of what the video showed.

Ms. Johnson testified she reviewed the video prior to determining that Mr. Harris and Mr. Lee should be terminated. She admitted the video does not show the actual physical fight, but Mr. Harris "coming towards the area" where the fight occurred. She said Mr. Harris was "screaming, angry, aggressive." She was unaware that Mr. Robinson was involved in the assault. She could not remember whether someone from Bennett took a written statement from Mr. Harris after the incident. Ms. Johnson testified it is Bennett's policy to terminate all persons involved in a fight at work.[4]

Mr. Hogan confirmed that Mr. Harris spoke to him twice about difficulties with Mr. Lee and Mr. Robinson before the assault. Mr. Hogan characterized their conflict as "a real personal problem" and "a personal issue between Terrel and Jacoby." He told them to work out their differences. Mr. Hogan acknowledged that Mr. Harris told him he felt like Mr. Robinson and Mr. Lee were upset because Mr. Harris was made a permanent employee and Mr. Lee was not. Mr. Hogan testified he did not believe at the time Mr. Harris spoke to him about the conflict that Mr. Harris was making it up.

Mr. Harris filed a Petition for Benefit Determination on August 12, 2015. (T.R. 1.) The parties did not resolve the disputed issues through mediation, and the mediating specialist filed a Dispute Certification Notice on September 9, 2015, certifying compensability and Mr. Harris' entitlement to medical and temporary disability benefits as issues for the Court's determination. (T.R. 2.) Mr. Harris filed a Request for Expedited Hearing (T.R. 3), and this Court heard the matter on March 21, 2016. At the expedited hearing, Mr. Harris asserted he approached Bennett twice to report his coworkers' threatening statements and behavior, but it took no steps to prevent his injury. He further argued Bennett wrongfully terminated him. Bennett countered that Mr. Harris' injuries were non-compensable as they were the result of a workplace assault in the nature of a private dispute, because the assault involved the use of personal insults and pejorative language.

### Findings of Fact and Conclusions of Law

The following legal principles govern this case. Mr. Harris bears the burden of proof on all prima facie elements of his workers' compensation claim. Tenn. Code Ann.

---

[4] Apparently Bennett terminated Mr. Harris and Mr. Lee solely based upon the written statements from an unnamed supervisor, coworker "Patrick," and Mr. Robinson. Bennett did not offer these written statements into evidence, nor did it call these individuals as witnesses. The Court is mindful that Bennett never took or considered a statement from Mr. Harris prior to terminating him.

§ 50-6-239(c)(6); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). Because this case is in a posture of an Expedited Hearing, Mr. Harris need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

In order to prove he is likely to prevail at a hearing on the merits, Mr. Harris must demonstrate a rational, causal connection between his injury and his work. The Tennessee Workers' Compensation Appeals Board recently reiterated longstanding principles with regard to causation, in a case that also addressed the compensability of a workplace assault, as follows:

> An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005). By contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Gas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Put another way, an injury arises out of employment when it "has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 498 (Tenn. 1992).

*Johnson v. Wal-Mart Associates, Inc.*, No. 2014-06-0069, 2015 TN Wrk. Comp. App. Bd. LEXIS 18, at *11-12 (Tenn. Workers' Comp. App. Bd. July 2, 2015).

Applying these principles to the facts of this case, the Court observed that Mr. Harris appeared self-assured, steady, confident, forthcoming, reasonable and honest during his testimony, which characteristics, according to the Tennessee Supreme Court, are indicia of reliability. *See Kelly v. Kelly*, 445 S.W.3d 685, 694-695 (Tenn. 2014). Mr. Harris credibly testified that he was at work on August 2, 2015, walking toward the restroom on a break after performing assigned tasks, when the assault occurred around 5:20 p.m. Ms. Johnson's testimony characterized Mr. Harris as the aggressor, but on effective cross-examination she conceded the video does not portray the actual physical altercation. She terminated him as a result of the fight. Thus, Bennett did not refute that the assault took place and Mr. Harris' injuries occurred in the course of his employment,

4

nor did Bennett refute that the reason for the assault germinated in Mr. Harris' promotion to permanent full-time work.

The determinative issue becomes whether Mr. Harris' injury arose primarily out of his employment. The statutory definition of "injury" provides: "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2015). Causation in the context of workplace assaults requires consideration of three categories of assaults:

> (1) [A]ssaults with an "inherent connection" to employment, such as disputes over performance, pay or termination;
> (2) [A]ssaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment; and,
> (3) [A]ssaults resulting from a "neutral force" such as random assaults on employees by individuals outside the employment relationship.

*Woods v. Harry B. Woods Plumbing Co.*, 967 S.W.2d 768, 771 (Tenn. 1998).

Here, the third category of assaults does not apply because the altercation was among coworkers. Therefore, the Court is left to choose between whether the assault has an inherent connection to Mr. Harris' employment with Bennett, or whether it stems from an inherently private dispute imported into the workplace. Assaults falling into the former category are compensable. *Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d 220, 227 (Tenn. 2007). Assaults falling into the latter category are not. *Woods*, 967 S.W.2d at 771.

Here, Mr. Harris' assault falls into the first category of assaults. He credibly testified his coworkers' motivation for the assault related to their anger over Mr. Harris' elevation to permanent employment. On cross-examination Mr. Hogan acknowledged that Mr. Harris told him this prior to the assault. The words and actions of Mr. Lee and Mr. Robinson cannot be classified as purely personal in nature, nor can they be considered imported into the workplace, because Mr. Harris did not know them prior to his employment with Bennett. Further, while Bennett implied Mr. Harris was the aggressor, "the common law aggressor defense as it relates to workers' compensation claims under the Act is abolished in Tennessee and does not bar" recovery. *Id.* at 773.

Additionally, the Court is unpersuaded by Bennett's characterization of the assault as personal and private due to the use of racial epithets, because the dispute originated from Mr. Harris' elevation to permanent employment rather than the use of racial slurs. *See LeeGrand v. Trinity Universal Ins.*, No. W2000-02264-SC-WMC-CV, 2002 Tenn.

LEXIS 250, at *11 (Tenn. Workers' Comp. Panel May 22, 2002) (while the co-employee assailant used racial slurs, the incident began with his criticizing the manner in which claimant performed his job and therefore the assault was compensable). Therefore, as a matter of law, Mr. Harris has come forward with sufficient evidence from which this Court concludes he is likely to prevail at a hearing on the merits regarding the compensability of his injuries.

With regard to the appropriate relief, according to the Dispute Certification Notice, Mr. Harris seeks reimbursement for past medical expenses as well as past temporary disability benefits. With regard to the first request, Tennessee Code Annotated section 50-6-2014(a)(1)(A) (2015) generally imposes liability upon employers for all "reasonable and necessary" medical care relative to a workplace injury. Mr. Harris introduced no medical bills or records documenting his treatment or its cost, so this Court cannot presently order reimbursement. However, he credibly testified that he continues to experience pain relative to the knee and shoulder injuries he sustained in the assault. He is entitled to a panel of three physicians from which he may select one to be the treating physician. *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2015).[5]

With regard to his second request – past disability benefits – the Court cannot consider Mr. Harris's entitlement to said benefits because there are no medical records in evidence documenting the extent of Mr. Harris' disability or its duration. *See generally Jones v. Crencor Leasing and Sales,* No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7-8 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015).

Finally, it is apparent to this Court that Mr. Harris seeks a ruling regarding whether Bennett improperly terminated him. This Court has no authority to make such a finding because it is limited to the remedies available under the Tennessee Workers' Compensation Law.

**IT IS, THEREFORE, ORDERED** as follows:

1. Bennett or its workers' compensation carrier shall provide Mr. Harris with medical treatment for his injuries as required by Tennessee Code Annotated section 50-6-204 (2015), to be initiated by Bennett or its workers' compensation carrier providing Mr. Harris with a panel of physicians as required by that statute. Mr.

---

[5] The Dispute Certification Notice lists "Medical Benefits" as an issue on page one, but does not list Mr. Harris' entitlement to a panel of physicians as an issue for resolution for page two. The Appeals Board recently held, "To determine what issues have been certified by the mediator in the dispute certification notice as contemplated in section 50-6-239(b), it is necessary to consider the document as a whole without reading its components in a vacuum." *Phillips v. Carolina Construction Solutions, et al.,* No. 2015-01-0208, 2016 TN Wrk. Comp. App. Bd. LEXIS 10, at *19 (Tenn. Workers' Comp. App. Bd. Feb. 26, 2016). Bennett did not question whether the issue was properly before the Court during the expedited hearing, but rather argued in closing that Mr. Harris is not entitled to a panel. Bennett waived any objection on this basis.

Harris or the medical providers shall furnish the medical bills to Bennett or its workers' compensation carrier for prompt payment.

2. Mr. Harris' requests for disability benefits and medical benefits in the form of reimbursement for past medical care are denied at this time, pending proof of same.

3. This matter is set for an Initial (Scheduling) Hearing on May 2, 2016, at 10:15 a.m.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED this the 24th day of March, 2016.**

_____
**Kenneth M. Switzer, Chief Judge
Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

7

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within

8

five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

<u>Exhibits:</u>
1. Affidavit of Terrel Harris, January 12, 2016

<u>Technical record:</u>
1. Petition for Benefit Determination, August 12, 2015
2. Bennett's pre-mediation position statement: Adjustor's email to the mediator, August 13, 2015
3. Dispute Certification Notice, September 9, 2015
4. Request for Expedited Hearing, January 12, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 24th day of March, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Terrel Harris, self-represented | X | | X | Terrelhyde77@yahoo.com; 625 Whispering Oaks Pl., Nashville TN 37211 |
| Gordon Aulgur, Employer's attorney | | | X | Gordon.aulgur@accidentfund.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

11