**FILED**

**September 13, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 12:21 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | | |
|---|---|---|
| **ROBERT LAWRENCE,** | ) | **Docket No.: 2015-07-0147** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 53531-2015** |
| **STOP N' SHOP,** | ) | |
| **Employer.** | ) | **Judge Allen Phillips** |

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

This matter came before the undersigned Workers' Compensation Judge on August 31, 2016, upon the Request for Expedited Hearing filed by the employee, Robert Lawrence, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Lawrence seeks medical benefits for a right knee injury.[1] Stop N' Shop did not appear for the hearing. Accordingly, the central legal issue is whether Mr. Lawrence came forward with sufficient evidence to show entitlement to medical benefits. For the reasons set forth below, the Court finds Mr. Lawrence has not come forward with sufficient evidence, at this time, to show entitlement to medical benefits.[2]

### History of Claim

Mr. Lawrence is a thirty-year-old resident of Gibson County, Tennessee. He worked for Stop N' Shop, a convenience store located in Humboldt, Tennessee. On May 18, 2015, he testified he was moving a case of soft drinks when the cashier on duty, "David," who was the storeowner's nephew, confronted him. Mr. Lawrence testified that David began "getting in his face" and "next thing I know he got more [sic] closer to me and I go flying over [a case on the floor]." This fall caused Mr. Lawrence to suffer what he described as a dislocation of his right knee.

---

[1] Mr. Lawrence filed a previous Petition for Benefit Determination that this Court dismissed on February 16, 2016, for his failure to prosecute the action. Mr. Lawrence filed the instant action on April 26, 2016.

[2] The Court has attached a complete listing of the technical record and exhibits admitted at the Expedited Hearing to this Order as an appendix.

When further detailing the event, Mr. Lawrence testified his sister came to the store on the night in question and David was talking to her. He "[b]elieve[d] [David's] anger . . . towards me [was] over my sister because he wanted, he liked her, he wanted to date her but she wasn't, I guess she wasn't going for it, but that was part of the anger." He offered no other theory of David's motive. The storeowner later called Mr. Lawrence while he was still at the store, cursed him, and told him to leave.

Mr. Lawrence called his sister to pick him up. His sister, Gloria Lawrence, testified she picked up her brother and noted his injured knee at that time. She was unaware of any affection directed toward her by David, the cashier, although she did state she was at the store on the night in question before the incident. She did not witness the incident and had no other personal knowledge of the event.

Antonio Lamont Hall, identified by Mr. Lawrence as his "cousin," testified he drove Mr. Lawrence to Humboldt General Hospital on the night of the injury. He corroborated Mr. Lawrence's knee injury by his personal observation but, had no knowledge of the incident itself. He later transported Mr. Lawrence to further medical appointments.

Mr. Lawrence testified he reported the injury on the night it occurred by calling "Alex," the store manager; Alex cursed him "in his own language."[3] His attempts at further contact with the employer were unsuccessful. As of the date of the hearing, he indicated he bore no animosity to Stop N' Shop but, as he testified, he wants them to "stand up for what happened in the store."

Mr. Lawrence testified he suffers from a learning disability, the exact nature of which is unclear, and that he was training for the Special Olympics before the injury. He obtained a high school diploma. When he was eighteen, he had surgery to repair a dislocation of his knee, but it had improved to normal function prior to the injury in question.

Mr. Lawrence offered medical records from Innovative Orthopedics in Paris, Tennessee. These indicated he suffered injury when he "got into it with his boss" and confirmed the prior knee dislocation. The provider diagnosed chondromalacia of the patella and recommended physical therapy. As of May 19, 2016, Mr. Lawrence was to follow up in one month. The records are consistent with Mr. Lawrence's testimony regarding his medical treatment.

Mr. Lawrence has not worked since the incident. He currently receives social security disability and Medicare benefits.

---

[3] Mr. Lawrence testified the store owners and staff, with the exception of Mr. Lawrence, are of Middle Eastern descent.

**Findings of Fact and Conclusions of Law**

*Standard applied*

Because this case is in a posture of an Expedited Hearing, Mr. Lawrence need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might conclude he would prevail at a hearing on the merits. *Id.* at *9. However, this lesser evidentiary standard does not relieve Mr. Lawrence from coming forward with sufficient evidence upon which the Court may appropriately find that his injury arose primarily out of and in the course and scope of employment. *Id.* When making this determination, the Court will not remedially or liberally construe the law in favor of Mr. Lawrence or Stop N' Shop but will construe it fairly, impartially, and in accordance with basic principles of statutory construction. Tenn. Code Ann. § 50-6-116 (2015).

At this Expedited Hearing, Mr. Lawrence chose to proceed without an attorney, which is his prerogative. "It is well-settled, however, that pro se litigants must comply with the same standards to which lawyers must adhere." *Bates v. Command Ctr., Inc.*, No. 2014-06-0053, 2015 TN Wrk. Comp. App. Bd. LEXIS 10, at *3 (Tenn. Workers' Comp. App. Bd. Apr. 2, 2015). While this Court must take into account that Mr. Lawrence has no legal training and little familiarity with the judicial system, it must also be mindful of the boundary between fairness to Mr. Lawrence, as a pro se litigant, and unfairness to Stop N' Shop. *Bucher v. Diversco*, No. 2015-05-0184, 2015 TN Wrk. Comp. App. Bd. LEXIS 46, at *9 (Tenn. Workers' Comp. App. Bd. Nov. 18, 2015). It is not the role of this Court to construct Mr. Lawrence's case or arguments for him. *Sneed v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010).

*Entitlement to Medical Benefits*

Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). However, the injury for which the employee seeks benefits must arise "primarily" out of and in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14) (2015). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility."

3

Tenn. Code Ann. § 50-6-102(14)(D) (2015).

Mr. Lawrence bears the burden of proof for all prima facie elements of a workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015). However, as stated above, at this Expedited Hearing he is not required to prove his injury arose primarily out of the employment by a preponderance of the evidence, but instead must come forward with sufficient evidence to show a likelihood of prevailing on this issue at a full hearing on the merits. However, when applying even this relaxed standard, the Court is constrained to find that he failed to provide such evidence.

Mr. Lawrence must show that his injury both arose out of and occurred in the course and scope of his employment at Stop N' Shop. An injury occurs in the course of employment if it takes place while the employee was performing a duty the employer hired him or her to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005). Here, when construing the facts impartially, Mr. Lawrence offered sufficient evidence that his injury was in the course of his employment; he was carrying a case of drinks as part of his work as a convenience store employee.

However, in this case, the arising-out-of requirement is pivotal. Arising out of the employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of the employment when there is a causal connection between the conditions under which the work must be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Of particular importance here is the principle that, "the mere presence of the employee at the place of injury because of the employment is not enough, as the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work." *Blankenship v. Am. Ordnance*, 164 S.W.3d 350, 354 (Tenn. 2005). Accordingly, "an injury purely coincidental, or contemporaneous, or collateral, with the employment . . . will not cause the injury . . . to be considered as arising out of the employment." *Jackson v. Clark & Fay, Inc.*, 270 S.W.2d 389, 390 (Tenn. 1954).

Mr. Lawrence testified he wanted Stop N' Shop to "stand up for what happened in the store." But, as stated, his mere presence at Stop N' Shop is not enough; there must be a danger or hazard peculiar to the work or a risk inherent in the nature of the work. The Court finds no such connection.

In so finding, the Court looks to Tennessee law relating to workplace assaults. There are three categories for such events:

(1) Assaults with an "inherent connection" to employment, such as disputes over performance, pay, or termination;

4

(2) Assaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment; and,

(3) Assaults resulting from a "neutral force," such as random assaults on employees by individuals outside the employment relationship.

*Woods v. Harry B. Woods Plumbing Co.*, 967 S.W.2d 768, 771 (Tenn. 1998). Assaults falling into the first category are compensable. *Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d 220, 227 (Tenn. 2007). Assaults falling into the second category are not. *Woods,* at 771. The third category does not apply.

Mr. Lawrence testified David "got in his face" over the apparent rejection by Mr. Lawrence's sister. There is no other proof before the Court. Therefore, his injury does not fall into the first category because, by his own testimony, the incident with David had no inherent connection to the employment. The incident did not stem from "performance, pay or termination," or any matter that appears to have a connection to work, other than the tangential fact that both men worked at Stop N' Shop.

The Court finds the incident stemmed from either an "inherently private dispute," the purported rejection of David by Mr. Lawrence's sister or, from some other unknown cause. In either circumstance, the employment bears no relation to the incident.

The Court finds Mr. Lawrence's description of his physical impairment credible. It also sympathizes with his pain and his frustration at his treatment by his former employer. Notwithstanding, this Court finds Mr. Lawrence is not entitled to workers' compensation benefits simply because the incident occurred at Stop N' Shop. The dispositive factor is that the injury did not arise primarily out of his employment. This result holds true even though Stop N' Shop failed to appear. This Court cannot grant benefits to a claimant by default if the basic allegations of the claim do not fit within the coverage formula of the law. However, the Court notes this Expedited Hearing is interlocutory in character and Mr. Lawrence may later present evidence of a work relation at a final Compensation Hearing.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Lawrence's claim against Stop N' Shop for medical benefits is denied at this time.

2. This matter is set for an Initial (Status) Hearing on December 8, 2016, at 10:00 a.m. Central time.

**ENTERED** this the 13th day of September, 2016.

_____

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Initial (Status) Hearing:

An Initial (Status) Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll-free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying

6

the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

<u>Exhibits:</u>
1. Affidavit of Robert Lawrence; and
2. Medical Records of Innovative Orthopedics (Dr. Cutright).


<u>Technical record:</u>
1. Petition for Benefit Determination;
2. Dispute Certification Notice; and
3. Request for Expedited Hearing.[4]

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 13th day of September, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Robert Lawrence, Self-Represented Employee | X | | | 1317 North 13th Ave., Humboldt, TN 38343 |
| Mohammed El Maliki, Self-Represented Employer | X | | | 524 North Central Ave., Humboldt, TN 38343 |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9