FILED

April 24, 2017

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

Time 3:50 PM



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**IN THE COURT OF WORKERS' COMPENSATION CLAIMS**
**AT MEMPHIS**

| | | |
|---|---|---|
| SHAUN COLE, | ) | **Docket No. 2016-08-1037** |
| **Employee,** | ) | |
| v. | ) | |
| M and D COATINGS, | ) | **State File No. 61090-2016** |
| **Employer,** | ) | |
| And | ) | |
| PENN. NATL. INS. CO., | ) | **Judge Allen Phillips** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on April 12, 2017, upon the Request for Expedited Hearing filed by Shaun Cole. Mr. Cole requested medical and temporary disability benefits for alleged injuries sustained in a workplace altercation on August 2, 2016. M and D contended the injuries did not arise primarily out of his employment because 1) the altercation bore no relation to the employment and 2) Mr. Cole instigated the altercation. Accordingly, the central legal issue is whether Mr. Cole came forward with sufficient evidence at the expedited hearing stage to demonstrate he sustained an injury arising primarily out of and in the scope his employment. The Court finds he did not and, accordingly, holds he is not entitled to the requested benefits.

### History of Claim

M and D is engaged in the business of cleaning, refurbishing, and painting large steel beams and frames; Mr. Cole worked there as a painter for approximately five years. The work involved the use of paint rollers and scrapers.

Mr. Cole testified that, on August 2, 2016, he saw a younger, recently hired co-worker, identified as "Jacob," using drugs on the job. Mr. Cole alleged Jacob was both

1

swallowing pills taken from a small pill bottle and smoking marijuana. He confronted Jacob regarding the alleged drug use, stating that "he did not want to get hurt [while working] by no punk-ass junkie." Jacob told Mr. Cole to stop talking because their supervisor was approaching.

The supervisor, Paul Blansett, then came to the area of M and D's shop where they were working. Despite Mr. Blansett's presence, the verbal interaction between Mr. Cole and Jacob continued and, according to Mr. Cole, it escalated by Jacob throwing a paint roller at him. Mr. Cole claimed the roller struck the right side of his face and his right hand, which he raised to block the roller. Mr. Cole claims the roller fractured his right ring finger.

After being struck, Mr. Cole looked at Mr. Blansett and stated, "What are you going to do about that?," or words to that effect. Mr. Cole's implication was that Jacob should be disciplined; he was not. Instead, Mr. Cole stated Jacob ran toward him in a menacing manner with a paint scraper in his hand. Mr. Cole threw a punch at Jacob with his *left* hand in self-defense, striking Jacob in the left shoulder and neck area.

Following the altercation, Rick Swords, M and D's superintendent, escorted the men to the break room and summarily fired them. Both men's separation notices listed "fighting" as the reason for discharge, and M and D offered into evidence a written policy defining fighting as a dischargeable offense.

M and D's witnesses described the events of August 2 differently. First, Mr. Swords testified he had warned the men to stay away from each other after the roller incident and that any further fighting would result in discharge. He saw paint on Mr. Cole's face after the roller incident but did not see the actual "throw." He saw Mr. Cole instigate a further confrontation with Jacob rather than Jacob coming at Mr. Cole.

Mr. Blansett recalled Mr. Cole arguing with Jacob throughout the morning and that, "the boy [Jacob] kept asking [Mr. Cole] to leave him alone." He did not see Jacob throw the roller but saw paint on Mr. Cole's face. He "got in the middle of them," but Mr. Cole "went after" Jacob. Mr. Cole threw a punch with what Mr. Blansett believed was his *right* hand because it struck Jacob on the left side of his nose, drawing blood. Mr. Cole said nothing to Mr. Blansett regarding the roller injuring his right hand.

Gary Porter, another painter, testified Mr. Cole had been "harassing" Jacob and heard Mr. Cole say "stop using drugs." Jacob asked Mr. Cole to quit calling him names but, when Mr. Cole called him a "punk-ass junkie," Jacob became angry and began "shaking" the roller at Mr. Cole. The roller slipped from Jacob's hand and struck Mr. Cole in the face; Mr. Porter did not see paint on Mr. Cole's hand. He also saw a paint scraper in Jacob's hand in the later altercation, but it was Mr. Cole who chased Jacob

around the shop before Jacob finally said, "I'm tired of running from you;" Mr. Cole then hit Jacob in the face, and "little Jacob had blood on his nose."

Another painter, Ron Taylor, testified Mr. Cole was "picking" at Jacob and recalled Jacob saying, "leave me alone." When the roller slipped from Jacob's hand, he "looked just as shocked as [Mr. Cole]." Mr. Taylor saw paint on Mr. Cole's face but could not say he saw any on his right hand. After the roller incident, and despite Mr. Blansett "getting in between them," Mr. Cole chased Jacob around "the frames" being painted and struck Jacob in the face.

None of the M and D witness saw any drugs or knew of any drug use by Jacob. Jacob did not testify.

Mr. Cole offered an x-ray report indicating a fracture of his right ring finger but offered no other admissible medical evidence. He testified he was off work for several weeks after August 2, but subsequently found other work as a welder. He requested payment of his medical bills, payment for time off work, and medical evaluation of his finger.

M and D contended the incident was not compensable because it bore no relation to the work and that Mr. Cole was the aggressor. It requested the Court deny the claim in its entirety.

## Findings of Fact and Conclusions of Law

*Standard applied*

Because this case is in a posture of an Expedited Hearing, Mr. Cole need not prove every element of his claim by a preponderance of the evidence. Instead, he must come forward with sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2016); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-9 (Mar. 27, 2015). This lesser evidentiary standard does not relieve Mr. Cole of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment, but allows some relief to be granted if his evidence does not rise to the level of a "preponderance of the evidence." *Buchanan v. Carlex Glass Co.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Sept. 29, 2015). Though he has elected to represent himself, as is his right, Mr. Cole still "must comply with the same standards to which parties with legal counsel must adhere." *Thurmond v. Yates Servs.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 34, at *5 (Sept. 8, 2015).

*Applicable authority*

To be compensable, Mr. Cole must show his alleged injury arose primarily out of and in the course and scope of his employment and that it was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. Further, he must show, "to a reasonable degree of medical certainty that [his alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14) (2016).

*Analysis*

The dispositive issue is whether Mr. Cole's injury arose out of his employment. The Court finds it did not.

In making this determination, the Court first notes that "arising out of" the employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.,* 938 S.W.2d 690, 692 (Tenn. 1997). An employee might satisfy the element of causation by showing his "injury has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.,* 833 S.W.2d 496, 498 (Tenn. 1992). However, the mere presence of the employee at the workplace does not satisfy the requirement; the injury must "result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work." *Blankenship v. Amer. Ordnance Sys., LLC,* 164 S.W.3d 350, 354 (Tenn. 2005). In this case, the evidence does not support that the altercation at issue had a rational, causal connection to the work at M and D, or that it stemmed from a danger inherent to working at M and D. This is true whether Jacob struck Mr. Cole with the roller intentionally, as Mr. Cole alleged, or negligently, as other witnesses observed.

In cases involving altercations, Tennessee law recognizes the assaults with an "inherent connection" to the work, such as disputes over pay, performance, or termination, are compensable. *Wait v. Travelers Indem. Co. of Ill.,* 240 S.W.3d 220, 227 (Tenn. 2007). Conversely, assaults resulting from "inherently private" disputes are not. *Woods v. Harry B. Woods Plumbing Co.,* 967 S.W.2d 768, 771 (Tenn. 1998). Namely, Tennessee recognizes that "an injury arising from an assault on an employee committed solely to gratify his personal ill-will, anger, or hatred, or an injury received in a fight purely personal in nature with a fellow employee, does not arise out of the employment within the meaning of the workmen's compensation acts." *Brimhall v. Home Ins. Co.,* 694 S.W.2d 931, 932 (Tenn. 1985), *citing* 82 Am.Jur.2d *Workmen's Compensation* § 330 (1976).

In this case, the evidence supports a finding that Mr. Cole and Jacob engaged in a "private" or non-work-related dispute. M and D's witnesses testified convincingly that Mr. Cole had badgered Jacob during the work day. When he called Jacob an offensive

4

name, Jacob either negligently or intentionally hit Mr. Cole with a paint roller. The specifics of how Mr. Cole was struck yield to the fact that the roller hit him because of a personal dispute between the men. In so finding, the Court recognizes that if an employee confronts another over a safety concern, as Mr. Cole alleges he did over Jacob's perceived drug use, then the altercation could be a dispute over job performance. However, there was no evidence, apart from Mr. Cole's supposition, that Jacob used or possessed drugs.

Likewise, M and D established through its witnesses that Mr. Cole "chased" Jacob around the work area to engage in the second round of the altercation. The evidence further supports a finding that he struck Jacob in the nose, at variance with his testimony that he struck him in the shoulder area. This behavior bears no relation to the men's work at M and D.

Even though the evidence supports a finding that Mr. Cole was the aggressor, M and D cannot rely upon this fact as a defense. Tennessee rejected the "aggressor" defense in workers' compensation cases. *Woods*, at 773. Specifically, the *Woods* court stated, "[a]n analysis requiring a determination of who threw the first punch, whether a sufficient cooling-off period had occurred between separate incidents and whether a worker reacted in excessive manner is contrary to the quick and efficient administration of disability benefits." *Id.* at 772. A deeper consideration of the facts here would require the Court to engage in exactly the type of analysis *Woods* rejected. Instead, as discussed above, the test is the "inherent connection," if any, between the work and the injury caused by the altercation.

The Court holds as a matter of law that Mr. Cole did not come forward with sufficient evidence to show he would likely prevail at a hearing on the merits in proving his injury arose out of his employment at M and D. Accordingly, his claim is denied at this time. Because of this holding, the Court need not address medical causation.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Cole's claim for benefits is denied at this time.

2. This matter is set for a Scheduling (Status) Hearing on **Wednesday, June 28, 2017, at 2:00 p.m. Central time. You must call toll-free at 731-422-5263 or toll-free 855-543-5038 to participate in the Hearing.**

**ENTERED this the 24th day of April, 2017.**

5

**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:

1. CD purporting to contain copy of Mr. Cole's x-rays at St. Francis Hospital (identification only—possession maintained by Mr. Cole)
2. X-ray report from St. Francis Hospital
3. Shelby Co. Sheriff's Office "Notice of Victim's Rights" Form (identification only)
4. Internet article regarding "Boxer Fractures" (identification only)
5. First Report of Work Injury
6. Wage Statement
7. Notice of Denial of Claim for Compensation
8. Photograph of paint roller
9. Mr. Cole's handwritten affidavit in support of Request for Expedited Hearing
10. Mr. Cole's typed statement offered in support of Request for Expedited Hearing
11. Photograph of paint scraper
12. Mr. Cole's handwritten diagram of site of injury
13. Mr. Cole's Separation Notice from M and D Coatings
14. Jacob Stagg's Separation Notice from M and D Coatings
15. M and D's "Basic Safety Rules and Enforcement Program" memorandum

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing with supporting affidavit
4. Employer's Filing of Evidence and Table of Contents
5. Table of Contents for Expedited Hearing
6. Employer's Response Brief to Employee's Request for Expedited Hearing

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 24th day of April, 2017.

| Name | First Class Mail | Via Email | Service Sent To: |
|------|------------------|-----------|------------------|
| Shaun Cole, Self-Represented Employee | X | X | godfearinmom@yahoo.com 3048 Darrow St. Memphis, TN 38118 |
| R. Scott Vincent , Esq., Attorney for Employer | | X | Scott.vincent@mgclaw.com Natasha.smith@mgclaw.com |

Penny Shrum, Clerk of Court
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**